SOMMERVILLE v. INDUSTRIAL COMMISSION et al.

No. 7111.   Decided August 3, 1948.   (196 P. 2d 718.)

See 71 C. J., Workmen's Compensation Acts, sec. 184. Test of independent contractor relationship in the field of workmen's compensation and social security, including unemployment compensation acts, see note, 147 A. L. R. 828.

*Elias L. Day* and *Allen L. Hodgson,* both of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *F. A. Trottier* and *J. M. Christensen,* both of Salt Lake City (deceased), for defendants.

WOLFE, Justice.

Review of an order of the Industrial Commission of Utah denying compensation to plaintiff for injuries sustained by

him while doing repair work on a building owned by defendant Cook. The sole question for our determination is whether plaintiff was an employee within the regular course of defendant Ina Cook's trade, profession, business, or occupation, or whether he was an independent contractor or casual employee and hence not within the provisions of the Workmen's Compensation Act. The commission denied compensation on the grounds that plaintiff was a "casual employee" at the time he was injured. Defendants contend that plaintiff was an independent contractor or, if an employee at all, then but a "casual employee," as that term has been defined by this court. Plaintiff insists that although his services were temporary, he was nevertheless employed in the regular course of Ina Cook's business.

The question of whether or not one engaged in a service for another is an employee or an independent contractor, within the meaning of the Workmen's Compensation Act, is a jurisdictional question, presenting a situation which requires this court to determine the status from the facts submitted, by a preponderance of the evidence. *Luker Sand & Gravel Co.* v. *Industrial Comm.,* 82 Utah 188, 23 P. 2d 225; *Parkinson* v. *Industrial Comm.,* 110 Utah 309, 172 P. 2d 136. But where, as here, the evidence in the case is largely uncontradicted, the problem is not so much one of examining the record to determine whether the evidence preponderates for or against the conclusion of the commission, but rather of determining whether the commission drew the correct legal conclusion therefrom. *Stover Bedding Co.* v. *Industrial Comm.,* 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006.

Defendant Ina Cook owned and operated a coffee shop in Tooele, Utah, under the name of Kirk Hotel Coffee Shop. In this business she employed seven employees, and she had had, since March, 1943, a Workmen's Compensation Insurance policy with the State Insurance Fund.

Mrs. Cook also owned a building with a storage shed connected thereto, about one mile away from the coffee shop. This property was rented to one Shields, who conducted

a retail grocery business thereon. This property had no connection whatsoever with the coffee shop or its business.

The gable end of this building had been damaged, and the building was otherwise in need of repair, and Mrs. Cook engaged plaintiff and one Gardner to make the repairs. Most of the negotiations leading up to this agreement were conducted by Gardner, acting both for himself and plaintiff. However, plaintiff was present at most of the conversations and according to his testimony he participated therein.

Mrs. Cook first discussed the matter with Gardner one morning when Gardner was in the coffee shop for breakfast. Mrs. Cook asked him if he were not working, and he replied that he had quit at the mine, that he was a building contractor and that he thought he could make more money by contracting. She then told him about her building and the repairs that were needed, and asked him if he would go over and look at it, to which he assented. Apparently plaintiff was not present at this conversation.

Some time later (whether the same day or not is not clear from the record), Gardner, plaintiff, and Mrs. Cook drove over to the building in plaintiff's car, and Mrs. Cook showed them what she wanted done. As to the conversation that took place at this time, Gardner testified as follows:

"Q. Just what was said with respect to the gable end? Did she say how she wanted it done and how it should be finished? A. She said to use my own judgment about the work on it. She wanted that gable end fixed to protect the inside from the weather.

"Q. In other words, she didn't tell you anything about the dimensions or what kind of materials; that was left up to you? A. That is right.

"Q. She didn't tell you how to put it in there; that was left up to you? A. That is right.

"Q. Did she tell you how to do any of the details of the work? A. No sir.

"Q. That was left up to you? A. Yes.

"Q. She never told you anything about what to do or how to do it after this one day you both looked at it and you agreed to do the job? A. That is right.

"Q. Was anything said about when you were to do it and how long you were to take? A. No.

"Q. Was anything said about when you were to go to work in the morning or afternoon? A. No sir.

"Q. That was left up to you, wasn't it? A. I guess it was when things were turned over to me to get the material to do the work.

"Q. She didn't tell you how much material to order? A. No.

"Q. You ordered what you thought was the right amount? A. That is right."

When Mrs. Cook asked how much the job would cost she was told that they would prefer to do the job for wages, but that it wouldn't cost her much. She was actually charged the union scale of wages for carpenters—$1.50 per hour. Mrs. Cook furnished the materials, and plaintiff and Gardner furnished their own tools.

While Gardner and plaintiff were engaged in making the repairs, a small piece of metal flew off one of the tools and into the eye of plaintiff. He found the injury annoying and painful, but continued on the job until it was completed. Subsequent medical examination revealed that plaintiff had suffered a permanent impairment of vision in the injured eye. Each of the men worked 15 hours, or about two days each, on the job.

It is now well settled in this jurisdiction that the crucial factor in determining whether an applicant for workmen's compensation is an employee or an independent contractor is whether or not the person for whom the services were performed had the right to control the execution of the work. See the recent case of *Christean* v. *Industrial Comm.*, 113 Utah 451, 196 P. 2d 502 reviewing most of the Utah cases on this question.

In this case there is no evidence that Mrs. Cook had any right to control the work of plaintiff and Gardner. The evidence clearly shows that she did not attempt to control the work in any particular, but on the contrary she merely showed them what work she wanted done and left it entirely up to them as to the method or manner of accomplishing the desired end result. They even

determined what materials should be used, and what quantity would be necessary. After she showed them what she wanted done she went back to the coffee shop and never visited the scene of operations again until after the work was completed. The preponderance of the evidence points to absence of right of control on the part of Mrs. Cook. She was interested only in the end result—that the repairs be accomplished. She was not interested in the manner in which plaintiff and Gardner accomplished this end.

Even if we were to treat the plaintiff as an employee rather than an independent contractor, we would still be bound to sustain the order of the commission, on the grounds that if plaintiff were an employee at all, he was only a casual employee.

Sec. 42-1-41(2), U. C. A. 1943, which defines "employees," specifically excludes from the benefits of the compensation act

"any person whose employment is but casual and not in the usual course of trade, business or occupation of his employer."

It was held in *Utah Copper Co.* v. *Industrial Comm.*, 57 Utah 118, 193 P. 24, 13 A. L. R. 1367, that the casualness of the employment should be determined by the nature thereof. See also *Holmen Creamery Ass'n* v. *Industrial Comm.*, 167 Wis. 470, 167 N. W. 808. And in *Capitol Cleaners & Dyers, Inc.*, v. *Ind. Comm.*, 85 Utah 295, 39 P. 2d 681, 682, we said:

"The work to be accomplished being in furtherance of and necessary to the business in which the company was engaged, the employment was not casual within the meaning of R. S. Utah 1933 42-1-41."

The test, then, as to whether an employee is a casual employee is whether the services rendered by him are necessary to, or in furtherance of his employer's usual trade, business, or occupation.

Mrs. Cook was not in the real estate or rental business as the term "business" is used in the Compensation Act; she was in the coffee shop business. It is true that the property

upon which plaintiff was working when he was injured was rental property from which presumably Mrs. Cook derived some income. But there is nothing in the record to indicate that she spent any substantial portion of her time in managing or operating this property, and it was not part of her trade or business within the meaning of the statute. It was a matter of investment. See *Clousen* v. *Dinnebeil*, 125 N. J. L. 223, 15 A. 2d 205; *Ostlie* v. *H. F. Kirks & Son*, 189 Minn. 34, 248 N. W. 283; *Ford* v. *Industrial Acc. Comm.*, 53 Cal. App. 542, 200 P. 667; *Setter* v. *Wilson*, 140 Kan. 447, 37 P. 2d 50; and Annotation at 50 A. L. R. 1176.

This is not to say that one may not be engaged in two or more businesses, or a profession or trade and a business at the same time; and be responsible under the Workmen's Compensation Act in both or all fields of activity. Nor do we hold that the owning and operation of real estate for rental purposes may not, in some instances, be a business within the meaning of the Workmen's Compensation Act. Our holding is limited to the facts of this case, i. e. that where a person owns one piece of real estate which he "rents out" to tenants, but does not either personally or by agent devote a substantial amount of time to the operation or management of such property, the owning and renting of such property does not constitute a business within the meaning of the Workmen's Compensation Act.

Therefore, Mrs. Cook was engaged in the coffee shop business, and the building upon which plaintiff was working at the time of his injury was wholly disconnected from and unrelated to that business. Since we have held that the owning and renting of this property did not constitute "a trade, business, or occupation" within the meaning of the act, and since this property was in no wise connected with the coffee shop business, it follows that the services being rendered by plaintiff at the time of this accident was not necessary to, in furtherance of or a part of plaintiff's usual trade, business, or occupation, and, hence under the rules and definitions previously laid down by this court, his employment (if he were an

employee at all) would be only casual, and therefore he would not be entitled to compensation under the act.

There is still a third theory upon which the order of the commission could be sustained. Even if we were to assume that plaintiff was an employee, and to assume further that Mrs. Cook was engaged in the real estate business as well as the coffee shop business, and that therefore plaintiff was regularly employed in her usual trade or business, still he would not be entitled to an award for the reason that, so far as the record shows, only two persons were engaged in making repairs (employed) in this business at the time of the accident. Sec. 42-1-41(2), U. C. A. 1943, which defines "employee" and enumerates those entitled to the benefits of the act, includes only those persons who are

"in the service of any 'employer' * * * who employes three or more workmen or operatives regularly in the same business, or in or about the same establishment * * *."

Since Mrs. Cook did not have three or more persons engaged in making repairs or otherwise employed upon her rental property, it is clear that plaintiff is not entitled to an award for that reason, even should the plaintiff be deemed an employee.

For the foregoing reasons the order of the commission is affirmed. Costs to defendants.

We concur:

McDONOUGH, C. J., and PRATT, and LATIMER, JJ., concur.

WADE, Justice (concurring in the result).

I concur with the result on the third ground stated in the prevailing opinion. Under both Sections 42-1-40 and 42-1-41, U. C. A. 1943, an employer must have "in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment." Mrs. Cook's restaurant business was not the same

business nor was it a part of the same establishment as this real estate or the operation thereof. The record does not disclose that there were three employees employed in the last mentioned business, if it can be called such.

I agree that generally the right of control determines whether the workman is an employee or an independent contractor. Here, as is usually the case, who does have the right of control must be determined from the facts and circumstances rather than depend on any express contractual provision. We have often pointed out that certain facts and circumstances tend to show the intention of the parties to be one way or the other and sometimes we have lost sight of the fact that it is the intention of the parties which governs the right of control and treated the matter as though certain elements as a matter of law placed the right of control in one or the other party. In my opinion these elements are valuable only to the extent that they logically tend to prove what the intention of the parties on this question was. I wonder if the prevailing opinion does not over emphasize some of the facts which it relies on to show an independent contractor relationship, and entirely ignore others which strongly tend to show that applicant was an employee.

Thus, where as here the employer has little or no knowledge of how the work in question should be done and has full confidence in the workman hired to do it the fact that she did not personally supervise the details thereof has little if any value in proving that she did not have the right of control.

There were two factors in this arrangement between Mrs. Cook and plaintiff and his companion that to my mind indicate that they were employees and that she had the right of control. First, she furnished the materials. Since she was furnishing and paying for them she had the right to determine what materials should be used, although she did not choose to exercise that right. This indicated an element of control which she had over their work. Second, she was paying them by the hour and not by the job.

Under such an arrangement she was inherently interested in the efficiency with which they performed their job, and in seeing that they put in an hour's worth of labor for their money. This suggests very strongly that she was interested in more than the end result and that she had the right of control over their labors, althought she did not choose to exercise it. While payment by the job is not strong evidence that the work is being done as an independent contractor, payment by the hour in my opinion is strong, if not conclusive evidence, of the right of the employer to control the manner of doing the work. Certainly had she come on the job and found these men were not putting forth a reasonable effort in accomplishing their job within a reasonable time, or that they were working inefficiently and at cross purposes, she would have the right to control them sufficiently to correct such a situation.

There is weight to the contention in the prevailing opinion that here there was no business at all and this was merely a casual employment. It clearly was not a part of her restaurant business. Both Sections 42-1-40 and 41, U. C. A. 1943, not only require three employees, but require employment in a business or in or about an establishment, and the cases cited in the prevailing opinion require that the work to be accomplished be in furtherance of and necessary to such business. But that does not require that such work be a continuing process of such business, it might well be that the work would be a necessary part of a business and only have to be done once in the duration of such business, such as the installing of a machine, or the building or repairing of a building where the business was housed. Here Mrs. Cook owned a building to which a storage shed was connected, where a renter conducted a grocery business. Apparently she was required to keep the building in repair and had the right to collect the rents therefrom. This has all the attributes of a business except that the volume of transactions may be too small to constitute a business, but certainly it would not have to be increased very much to meet the requirements in that respect.