Cross and another, Appellants, vs. LEUENBERGER and another, Respondents.*

*May 5—June 8, 1954.*

* Motion for rehearing denied, without costs, on October 5, 1954.

For the appellants there were briefs by *Bitker & Marshall,* attorneys, and *Gerald J. Kahn* of counsel, all of Milwaukee, and oral argument by *Mr. Kahn.*

For the respondents there was a brief by *Bendinger, Hayes & Kluwin,* attorneys, and *Donald J. Tikalsky* of counsel, all of Milwaukee, and oral argument by *John A. Kluwin.*

CURRIE, J. The complaints attempt to allege causes of action based upon a violation of the safe-place statute. The particular negligence alleged is that of permitting a natural accumulation of ice and snow to remain on the steps and approaches to defendants' apartment building for an unreasonable length of time.

In *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 212, 262 N. W. 585, this court stated:

*"The permitting of temporary conditions wholly dissociated from the structure* does not constitute a violation of the safe-place statute by the owner of a [public] building, although it may, and *undoubtedly does, constitute a violation if permitted by an employer."* (Emphasis supplied.)

This same distinction as to the greater duty placed by the safe-place statute upon an employer providing a place of employment, as contrasted with that resting upon the owner of a public building, was again emphasized by this court in *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 628, 60 N. W. (2d) 349.

Therefore, whether the plaintiffs' complaints state facts sufficient to constitute a cause of action is dependent upon whether the steps and approaches to defendants' apartment building constituted a place of employment within the allegations of the complaint. Sec. 101.01 (1), Stats., defines a place of employment as follows:

"The phrase 'place of employment' shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . ."

If the phrase of the statute "where any person is, directly or indirectly, employed by another for direct or indirect gain or profit" stood alone as a definition of a place of employment, the allegation of the complaints, that the defendants at all times employed one or more persons to operate their apartment house, would be sufficient to constitute the same a place of employment. However, such phrase is preceded by the conjunction *"and,"* not *"or."* As pointed out in 50 Am. Jur., Statutes, p. 267, sec. 281, *"or"* is a disjunctive particle while the word *"and"* is a conjunctive particle. Therefore, this last-quoted phrase cannot stand by itself but must be con-

sidered jointly with that which precedes it, viz., "where either temporarily or permanently any *industry, trade,* or *business* is carried on."

The operation of an apartment house is certainly not a *"trade,"* but whether it constitutes a *"business"* presents a closer question. This particular question is apparently one of first impression in this state. The provisions of our safeplace statute seem to be unique to Wisconsin and not found in the statutes of any other state. However, many of the Workmen's Compensation Acts of other states contain provisions excluding coverage unless the injured workman was engaged in the "trade" or "business" of the employer at the time of the accident, and quite a number of cases have arisen under such acts where the courts have been called upon to pass on the question of whether the ownership of leased or rented property constitutes a trade or business.

In an annotation appearing in 50 A. L. R. 1176, 1177, entitled "Ownership of leased or rented property as constituting business, trade, occupation, etc., within Workmen's Compensation Acts," the author states the majority rule to be as follows:

"The mere owning of a house, maintaining it, and keeping it in repair and renting it, so that it may produce an income, is not sufficient to constitute a business, nor does the owning and renting of more than one house necessarily constitute a business; *but such transactions at most only amount to a regular business, within the meaning of the compensation act, when they are carried on to such an extent as to require a substantial and habitual devotion of time and labor to their management and operation."* (Emphasis supplied.)

In the recent case of *Sommerville v. Industrial Comm.* (1948), 113 Utah, 504, 196 Pac. (2d) 718, one Mrs. Cook owned and operated a coffeeshop and about one mile distant

she also owned a building which she leased out to a tenant who conducted a retail grocery business therein. A workman, who was engaged to make some repairs on the leased building, was injured and sought to recover from the owner under the Utah Workmen's Compensation Act which specifically excluded from benefits "any person whose employment is but casual and not in the usual course of trade, business, or occupation of his employer." In holding that the injured workman could not recover workmen's compensation benefits, the Utah court stated (113 Utah, 509; 196 Pac. (2d) 721):

"Mrs. Cook was not in the real estate or rental business as the term 'business' is used in the compensation act; she was in the coffeeshop business. It is true that the property upon which plaintiff was working when he was injured was rental property from which presumably Mrs. Cook derived some income. But *there is nothing in the record to indicate that she spent any substantial portion of her time in managing or operating this property, and it was not part of her trade or business within the meaning of the statute. It was a matter of investment.*" (Emphasis supplied.)

A similar decision is that of *Setter v. Wilson* (1934), 140 Kan. 447, 37 Pac. (2d) 50. A workman was electrocuted while doing some repair work in the basement of a two-story building. The first story of such building was divided into two stores which were rented to tenants. At the time of the accident the second story was vacant. The owner of the building obtained part of her income from the rentals of such building. The principal issue before the court was whether recovery could be had for the death under the Kansas Workmen's Compensation Act, which in part provided, "That this act shall apply only to employment in the course of the em-

ployer's trade or business." The court held that the owner was not engaged in a trade or business, and stated (140 Kan. 450, 37 Pac. (2d) 52):

"In the case under consideration there is no evidence that the owner of the property was engaged in the business of acquiring, improving, and holding real estate as a means of livelihood, for the evidence went no further than that she derived a part of her income from the leased premises, and that when it needed repairs, she had them made."

In the case of *Clausen v. Dinnebeil* (1940), 125 N. J. L. 223, 15 Atl. (2d) 205, the owner derived his entire livelihood from the rentals obtained from six houses which he owned and leased, but, nevertheless, the New Jersey court held this did not constitute a business within the meaning of the New Jersey Workmen's Compensation Act. The gist of the court's decision appears from the following quotation therefrom (125 N. J. L. 225, 15 Atl. (2d) 206):

"We conclude that the employer in this instance was not in a regular business. Looking after his own property—six houses—and collecting the rent of same, as well as making occasional repairs, can hardly be considered a business, . . ."

For the purposes of the instant case, it is not necessary for us to take as extreme a position as did the New Jersey court in *Clausen v. Dinnebeil, supra*. The complaints herein only allege that the defendants owned and operated the apartment house, and this is insufficient to establish that the operation of the apartment house is a *"business."* As suggested by the Utah court in *Sommerville v. Industrial Comm., supra,* such ownership may have constituted merely an investment. Therefore, the learned trial court rightly sustained the demurrers to the complaints.

*By the Court.*—Orders affirmed.

The following opinion was filed October 5, 1954:

CURRIE, J. (*on motion for rehearing*). Counsel for plaintiffs in their briefs filed in support of their motion for rehearing contend that this court should adopt the rule applied by the federal courts in federal income-tax cases in determining whether the operation of an apartment building constitutes a "business" within the meaning of the safe-place statute, rather than the test applied in the workmen's compensation cases cited in our original opinion. We deem that the objective sought by the enactment of the safe-place statute, in so far as applicable to places of employment, is more nearly akin to that which prompted the enactment by the states of their Workmen's Compensation Acts than is that of the federal income tax. Therefore, we adhere to the principles enunciated in our original opinion.

The orders of the trial court sustaining the defendants' demurrers to the plaintiffs' complaints gave the plaintiffs the right to serve amended complaints within a period of twenty days of service of the orders. The memorandum decision of the learned trial judge gave as a reason for sustaining the demurrers that a temporary natural accumulation of snow and ice could never be the basis of liability under the safe-place statute. Because of this ruling the plaintiffs deemed it would be useless to plead over, and failed to do so within the twenty-day period afforded for such purpose, but instead appealed to this court. In our opinion we disapproved of the reason advanced by the trial court for sustaining the demurrers, but upheld the trial court's orders upon an entirely different ground, and one which the defendants apparently never raised in the trial court.

We, therefore, conclude that the interests of justice require that the plaintiffs be afforded the opportunity to serve

amended complaints. We did not hold in our original opinion that the owning and operation of real estate for rental purposes may not under certain circumstances be a "business" within the meaning of the safe-place statute. It is conceivable that plaintiffs may be able to allege facts sufficient to establish that the apartment house was operated by the defendants as a business.

*By the Court.*—The mandate of the previous opinion is modified to read as follows: "Orders modified so as to grant to the plaintiffs the privilege of serving amended complaints within a period of twenty days from the remittitur of the record from this court to the circuit court, and as so modified the orders are affirmed." The motion for rehearing is denied without costs.