STEVENS, Respondent, vs. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Appellants.

*October 6—November 9, 1954.*

28

For the appellants there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

For the respondent there was a brief and oral argument by *Robert P. Stebbins* of Green Bay.

CURRIE, J.  Counsel for defendants advance but two contentions on this appeal, the same being:

(1) That the found negligence as to lookout on the part of the defendant Manders could not be causal as a matter of law; and

(2) That plaintiff's negligence was at least equal to that of the defendant Manders as a matter of law.

County Trunk Highway H, on which the accident occurred, was described by the traffic-officer witness as being an ordinary town gravel road approximately 18 feet in width. The grass line came up to the traveled portion of the highway on both sides, but there was very little, if any, usable shoulder at the time and place of the accident.

The plaintiff resided in a house located on the east side of the highway about two blocks south of the point of impact. To the northward from where plaintiff lived the highway passed over two hills with a dip or depression between them. The nearer of such two hills was so low that one approaching said hill on the highway from the south could see the top portion of another vehicle on the highway at the bottom of the depression between the two hills, although the hill was sufficient to obscure the lower portion of such vehicle. The accident occurred shortly after 8 a. m. on a cloudy, rainy morning in April. Plaintiff had driven a 1939 two-door Chevrolet sedan out of the driveway of her home onto the highway proceeding north. For the first block she had the car in low gear in order to warm it up, as the engine was spitting and sputtering. She then shifted into second gear and traveled approximately another block in such gear until the accident occurred about at the crest of the first hill.

Plaintiff testified that she saw the truck driven by Manders come over the crest of the second hill, and then as it proceeded down into the depression between the two hills she saw it veer over onto the east side of the road. She assumed this was to avoid a chuckhole which she knew was located at the bottom of the hill. However, according to her story, the truck proceeded to come up the hill to the south on its wrong or east side of the highway. Plaintiff first tried to pull over to the right or east, but in so doing was not able to remove her car from the path of the oncoming truck sufficiently, in her judgment, to avoid a collision, so when the truck was about 40 feet away she turned her car suddenly left or to the west. At the same time the truck driver also turned his truck to the right or west, and the two vehicles collided practically head on in the west half of the traveled portion of the road. She estimated her own speed just prior to the collision as being from 15 to 20 miles per hour.

The defendant Manders testified that he did turn his truck to the left or east to avoid the chuckhole, but that, as he proceeded southward up the hill beyond, his truck was proceeding with the left wheels about in the center of the road. If this were true, then the outermost part of the left side of the truck which projected beyond the left wheels would have been on Manders' left or wrong side of the highway.

The following questions were asked Manders, and he gave the following answers thereto:

"*Q.* And how far away was that Chevrolet sedan when you first saw it? *A.* Oh, I'd say around—maybe 50 feet.

"*Q.* Maybe 50 feet. About how fast was it traveling when you saw it? *A.* What do you mean, the automobile?

"*Q.* Yes. *A.* About 40 miles an hour."

Although he estimated the speed of plaintiff's vehicle at 40 miles per hour, and that of the truck at 25 miles per hour, he testified that each vehicle went approximately 25 feet to the point of impact after he first sighted the Chevrolet driven by plaintiff, which would tend to indicate that each vehicle was traveling at approximately the same speed.

Manders stated that after sighting the Chevrolet he turned his car to the right or west side of the highway and applied his brakes, but that the plaintiff turned her vehicle in the same direction causing the impact to occur on his right or west side of the traveled portion of the highway. Plaintiff's testimony, that Manders was operating his truck on the east side of the highway as he came up the hill, was corroborated by three witnesses who arrived at the scene of the accident shortly after it occurred. All three testified to seeing dual tire marks extending from the overturned truck driven by Manders lying in the west ditch of the highway back northward a distance of at least 200 feet. Such witnesses testified that the east dual tire mark was from 16 inches to three feet from the east grass line where such marks indicated the path of the truck as

it came up the hill. A traffic officer called by the defendant arrived at the scene of the accident about one-half hour after it occurred. He testified he could see no marks on the highway attributable to the accident. His testimony may be explained by the fact that any prior visible marks had been obliterated by passing traffic. In any event, the jury had the right to believe plaintiff's witnesses who testified positively as to the location of the dual tire marks of the truck visible immediately after the accident.

Several witnesses testified that Manders, immediately after the accident, when asked why he had been traveling on the wrong side of the highway, stated that he could not see plaintiff's car because his windshield wiper was not working. Manders, in turn, denied making such statement. After the accident the Chevrolet driven by plaintiff was still standing on the highway, but the force of the impact had swung it around so that it was facing south in the opposite direction from which it was proceeding. The truck was tipped over on its side in the west ditch at right angles to the traveled portion of the highway.

Counsel for the defendants contend that the jury, by finding that plaintiff "at the time of and immediately before the collision" failed to yield one half of the traveled portion of the highway to Manders and that Manders did not so fail, in effect found Manders was on the right or west side of the highway as he proceeded up the hill south of the chuckhole, thus rejecting plaintiff's testimony that Manders was proceeding in the east traffic lane until he suddenly swerved west at a point when the two vehicles were about 40 feet apart. In further support of such contention counsel cite the fact that the trial court properly instructed the jury on the emergency doctrine but nevertheless the jury found plaintiff negligent. Then from this premise counsel argue that Manders' negligence in failing to keep a proper lookout could not be causal

because he was already in his proper lane of travel on the west side of the highway when he first saw plaintiff's car 50 feet away from him.

We believe such argument is grounded upon a false premise. All reasonable inferences must be resolved in favor of sustaining the jury's verdict. When the jury attributed 75 per cent of the total negligence to Manders and but 25 per cent to plaintiff a reasonable inference is to be deduced therefrom that the jury did conclude that Manders was in the east traffic lane when he first saw plaintiff's car and his failure to see plaintiff sooner and turn his car into his proper lane of travel was the primary cause of the collision.

The wording of the introductory portions of question 1 of the verdict inquiring as to negligence on the part of Manders was unfortunate in view of the facts of the case. Such question inquired as to whether Manders "at the time of and immediately before the collision" was negligent in the several respects thereafter enumerated. *"And"* is a conjunctive and not a disjunctive particle. *Cross v. Leuenberger* (1954), 267 Wis. 232, 235, 236, 65 N. W. (2d) 35, 66 N. W. (2d) 168. This being so, the jury may well have concluded that in order to answer subdivision (b) of question 1 of the verdict "Yes" so as to find that Manders had failed to yield one half of the traveled portion of the highway to plaintiff it would be necessary that Manders have been on the wrong side of the highway *"at the time"* of the accident as well as *"immediately before,"* and the evidence was undisputed that at the moment of collision Manders' truck was in his proper lane of travel. Proceeding on the basis of such an assumption the jury could not do otherwise than answer such subdivision "No."

In the case of *Haskins v. Thenell* (1939), 232 Wis. 97, 102, 286 N. W. 555, in which a collision between two automobiles proceeding in opposite directions was alleged to have taken place as a result of each operator turning to his left,

Mr. Justice NELSON suggested a form of the question to be submitted in the special verdict inquiring as to the negligence of the drivers with respect to being in the wrong lane of travel before making the sudden turn left immediately before the accident. Such suggested form of question could properly have been used in the instant case with but slight modification by wording question 1 of the special verdict as follows:

"As the two vehicles were approaching each other, and before either of them turned to the west immediately prior to the collision, was the defendant, Sylvester Manders, negligent in any of the following particulars:
"(a) With respect to lookout?
"(b) With respect to yielding one half of the traveled portion of the highway to the plaintiff, Virginia Stevens?"

We believe that wording question 1 as above suggested would have tended to avoid confusion on the part of the jury and made it easier for the jury to resolve the question as to whether Manders was negligent in being on the wrong side of the road at the time immediately before he swerved his car to the west and applied his brakes.

With respect to the issue of whether Manders' negligent lookout was causal, we hold that the jury was amply warranted in finding that it was because if Manders had seen plaintiff's car sooner he undoubtedly would have turned his truck into the west travel lane in plenty of time so as not to have alarmed the plaintiff and caused her to turn her vehicle left as she did.

As pointed out in the recent case of *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134, it is only in rare cases that this court will disturb a jury's comparison of negligence, and no more can be read out of the precedents as to when it is proper for a court to change such comparison than that each case must be considered upon its peculiar facts. In the instant case the jury by apportioning

75 per cent of the aggregate negligence to Manders must have concluded that it was his negligent lookout which initiated the chain of events which culminated in the collision, and, that while plaintiff was also negligent in turning left as she did, such negligence was not as great as that of Manders. We deem such comparison of negligence was peculiarly for the jury, and that this court should not disturb the same.

The defendants made no motion after verdict for a new trial on the ground of an inconsistent verdict and that issue is not before us on this appeal.

*By the Court.*—Judgment affirmed.