GUPTON, Appellant, v. CITY OF WAUWATOSA and another, Respondents.*

*January 4—February 2, 1960.*

* Motion for rehearing denied, with $25 costs, on April 8, 1960.

218

220

For the appellant there were briefs by *H. R. George,* and oral argument by *Mr. George* and *Mr. Harvey L. Mc-Cormick,* both of Milwaukee.

For the respondent city of Wauwatosa there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

For the respondent Lefeber Building Corporation there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *James C. Mallien* of counsel, all of Milwaukee, and oral argument by *Mr. Mallien.*

BROWN, J. It may be doubted that the portion of the building where plaintiff was at work and was injured is a public building within the meaning of the safe-place statute, in that the duty of the owner of a public building under the safe-place statute to maintain the building in a safe condition extends only to such portions which are used or held out to be used by the public or tenants in common. *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 381, 29 N. W. (2d) 754, 758. The duty of the owner of a public building to construct or maintain a building in safe condition extends only to such parts of the building as are used by the public or by three or more tenants in common. *Hanlon v. St. Francis Seminary* (1953), 264 Wis. 603, 606, 60 N. W. (2d) 381, 382. However, this is indisputably a place of employment and as such is included in the safe-place statute, sec. 101.06, Stats. 1955, and by its terms applying to both employer and owner, and which reads:

"EMPLOYER'S DUTY TO FURNISH SAFE EMPLOYMENT AND PLACE. Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

That statute was set forth and relied upon in plaintiff's amended complaint.

The orders of the industrial commission concerning safety regulations have the force of law. Its order, sec. Ind 1.53, 2 Wis. Adm. Code, which is identical with its order, sec. Ind 52.03, 3 Wis. Adm. Code, provides:

*"Window cleaning.* (1) For protection of window cleaners in public buildings and places of employment, the tops of windows which are more than 20 feet above the ground floor, flat roof, balcony, or permanent platform shall be equipped with means to protect such cleaners; such means shall consist of:

"(a) Approved attachments for window cleaners' safety belts, to which such belts may be fastened at each end. Said attachments shall be permanent devices that shall be firmly attached to the window frame, or to the building proper, and so designed that a standard safety belt may be attached thereto; or

"(b) An approved portable platform that is projected through the window or supported from the ground, floor, roof, or platform level, for the window cleaner to stand upon and that is designed, constructed, maintained, and equipped with handrail and toeboard in compliance with the requirements of the general orders on safety and of the general orders on safety in construction; or

"(c) A swinging scaffold or chair scaffold designed, constructed, equipped, and maintained in compliance with the requirements of the general orders on safety in construction, and in the case of a chair scaffold equipped with a safety belt; or

"(d) Other equally efficient devices."

It is admitted that there were no attachments for safety belts, no platform, and no swinging scaffold or chair scaffold. The question is to determine whether some other equally efficient device was provided for the protection of the window cleaner. Neither of the defendants provided a safety device of any sort.

Industrial commission order, sec. Ind 1.53 (4), 2 Wis. Adm. Code, and order, sec. Ind 52.03 (4), 3 Wis. Adm. Code, recite:

"Every employer of window cleaners who are required or permitted to clean windows or skylights referred to in sec. Ind 1.53 (1) and (2) shall before permitting any of such work, make reasonable inspection of the equipment provided for the safety of the window cleaners; and if no such equipment, complying with the provisions of this order, is provided by the owner, lessee, or occupant of the building or place of employment, said employer shall provide the same before permitting his employees to do such work. . . ."

From this it is apparent that duplication of the safety devices is not required by the individual owner, tenant, and contract employer. It is sufficient if any one of them provides a safety device demanded by the order.

The only devices which the defendants allege to have been provided by anyone are extension ladders especially designed for window-cleaning operations. Plaintiff and his associate brought with them in their truck a number of such ladders of sufficient height to reach above the windows to be washed. These ladders have siderails which curve toward each other at the top and thus taper to a point. They are so designed to prevent the ladder slipping where it rests against the wall or window sill at its higher end. It also had rubber shoes at the lower ends of the siderails so that the ladder would not slip at the bottom. The plaintiff does not complain that the ladders were not good ladders but he does submit that the ladder is not an "equally efficient device" as specified in order, sec. Ind 1.53, Wis. Adm. Code, and order, sec. Ind 52.03, 3 Wis. Adm. Code. He places some reliance on the definition of ladders given in order, sec. Ind 1.15, 2 Wis. Adm. Code, which is:

"*Ladders.* (1) *Definition.* A ladder is an appliance usually consisting of two siderails joined at regular intervals by crosspieces called steps, rungs, or cleats, on which a person may step in ascending or descending."

From this he argues that a ladder may be used only in going up or down but not in standing on a ladder to work from it. We do not think that the definition in itself includes any such limitation of the user's activity. This definition of "ladder" is simply the dictionary definition with no particular reference to industrial commission safety orders. Thus Webster's Collegiate Dictionary defines:

*"Ladder.* An appliance consisting of two long sidepieces, usually parallel, joined at intervals by crosspieces on which a person may step in ascending or descending."

We know, as every person past babyhood knows, what a ladder is and that ladders are very commonly used to stand upon them while working. But the tops of the windows which the plaintiff was to wash were more than 20 feet above the ground floor. The question is whether the ladders which Adept Window Cleaning Company supplied or made available to the plaintiff were devices equally efficient from a safety standpoint as were attachments for safety belts firmly attached to the structure of the building or portable platforms with guardrails or the swinging scaffolds or chair scaffolds described in order, sec. Ind 1.53, 2 Wis. Adm. Code. We hold as a matter of law that they are not.

We regard questions (1) and (3) of the special verdict, summarized in our foregoing statement of facts, as theoretically inadequate because the questions dealt only with the effect of the omission of safety-belt attachments. The industrial commission's orders approve other safety devices, so the absence of any certain one of the approved devices does not conclude the inquiry into the question of whether the place was made safe. Practically, upon this record, the form and scope of those questions become immaterial because *no* "equally efficient devices" were provided by anyone and the omission of *all* such devices by all persons charged with a duty to provide at least one such device

renders unsafe the place where the appellant was ordered or permitted to work.

Joseph Taylor, the president of the window-cleaning company, testified that he had told the plaintiff not to stand out on the window sill but should use a ladder. He had previously put Gupton on a job, washing the outside of windows and using a safety belt, but Gupton had nearly fallen on a certain job when he detached the belt to move his position and at that time Taylor told Gupton that he would not put him in belts any more and that his duties would be to work either with ladders or to work on the inside.

Gupton himself testified that the ladders they had brought to the job were in good condition, that he had used them in washing other windows, that his employer had rules against standing on the ledge without a belt. Nevertheless, although he saw that there were no safety-belt attachments and that ladders were available for use on the truck, which at least were safer to work from than from the narrow ledge, he opened the window and crawled out on the ledge, in disobedience of the orders given by the president of the employer. In choosing this indisputably dangerous method he could be found guilty of contributory negligence. The jury found that he was and the evidence sustains the finding.

The appellant submits that the court erred in using the term "ordinary prudent person" in its instructions relating to defendants' duty. This is substantially the instruction approved in *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 81, 94 N. W. (2d) 187, 189. We do not consider that the instruction was error.

Neither defendant provided an approved safety device for the protection of plaintiff in his place of employment but the contributory factor of plaintiff's own negligence can only be resolved and apportioned by a jury. This requires a new trial, and we have concluded to grant one on all issues.

*By the Court.*—Judgment reversed. Cause remanded for a new trial.

The following opinion was filed April 13, 1960:

Per Curiam (*on motion for rehearing*). Counsel for Lefeber Building Corporation, the owner, assert that the window ledge, the place where the accident occurred, was not a place of employment for the purpose of imposing a duty upon the owner. The city, while not moving for rehearing, has asserted that the window ledge was not a place of employment as to the city. Both base their contention upon the fact that the window ledge was appurtenant to the city offices; the city was performing governmental functions in its offices, and therefore such offices are not a place of employment within the meaning of secs. 101.01 (1) and 101.06, Stats.

We did say at page 220 of the opinion filed February 2, 1960, that it may be doubted that the portion of the building where plaintiff was at work (the window ledge) is a public building within the meaning of the safe-place statute because not used by the public. We have no doubt, however, that the building as a whole constituted a public building.

The orders of the industrial commission quoted in the opinion are expressly applicable to "window cleaners in public buildings" and the present arguments of Lefeber Building Corporation and the city must mean that the commission had no power to make such an order applicable to public buildings unless the premises were also places of employment.

Perhaps it could be argued, as a matter of original statutory interpretation, that a window ledge outside the quarters occupied by a governmental body or charity is not, under the statute, part of a public building to which the public has access. We think, however, that any doubt on this score must be resolved by deference to the commission's administrative interpretation embodied in the safety orders referred to.

Sec. 101.09, Stats., vests the commission with supervision of every employment, place of employment, and public building as may be necessary adequately to enforce and administer all laws requiring them to be safe, and requiring the protection of the life, health, safety, and welfare of every employee in such employment or place of employment. Sec. 101.10 (4) and (5) authorize the commission to fix reasonable standards for safety devices for places of employment, and for construction of places of employment and public buildings so as to render them safe. Consequently, in performing its duties, the commission is forced to determine whether its jurisdiction extends to certain portions of public buildings, and in doubtful situations its determination is entitled to weight. It has evidently determined that the window ledges of public buildings are parts of public buildings over which it has jurisdiction, and to which its safety orders are applicable when window cleaners are employed on such ledges. This is on the theory that independently employed window washers are part of the public.

Therefore, the city may be held liable for breach of such safety orders because it is in control of a public building, although as a municipal corporation it might not be held liable as an employer. *Hoepner v. Eau Claire* (1953), 264 Wis. 608, 60 N. W. (2d) 392.

In moving for rehearing, Lefeber Building Corporation submits that under the facts of the case it has no duties prescribed by the safe-place statute because the place where the accident occurred was not a "place of employment" as defined by sec. 101.01 (1), Stats., which reads:

"The phrase 'place of employment' means and includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on,

or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . ."

The accident occurred at that part of the Lefeber Building, or was appurtenant thereto, which the corporation had leased to the city for city purposes.

This respondent cites *Cross v. Leuenberger* (1954), 267 Wis. 232, 65 N. W. (2d) 35, 66 N. W. (2d) 168. That case held on demurrer that a complaint alleging that a defendant owned and managed an apartment building was not a sufficient allegation that this constituted a carrying on of a business within the statute now in question. But we said there that allegations of additional facts *might* establish that the apartment house was operated as a business.

Such additional facts are here in evidence. We take judicial notice of the articles of incorporation of Lefeber Building Corporation recorded in the office of the secretary of state. The articles recite that "the *business* and purpose of such corporation [is] to own, hold, . . . operate, . . . lease, . . . manage or otherwise deal in . . . real estate . . ." etc., etc. The corporation owns the place of the accident, this building. For gain or profit it leases, operates and manages space in it, including space to the city. By the corporation's own declaration this is its business.

The corporation's lease to the city obliges the corporation to heat the space leased to the city, to maintain the heating and plumbing systems in good condition, and permits the corporation to enter the premises to inspect and to make necessary repairs, which can be performed only by employing natural persons. We consider that in so far as the corporation is presently concerned the corporation's description of its business and its own activities in its business makes the entire building a "place of employment."

We recognize that governmental functions as carried on in the demised premises do not constitute carrying on business, *Flynn v. Chippewa County* (1944), 244 Wis. 455, 12 N. W. (2d) 683, and, as these issues affect the city, the city office is not a place of employment within the definition of sec. 101.01(1), Stats. In *Waldman v. Young Men's Christian Asso.* (1938), 227 Wis. 43, 46, 47, 277 N. W. 632, the Y. M. C. A. did not carry on a business in that part of its building. But Lefeber Building Corporation's business regarding the offices which it leases to the city, for which the corporation charges and collects rent, is the same as in renting the other stores and offices in its building. The corporation is to be judged by *its* business—what the *corporation* does with this space in its building—and not alone by whether the tenant does or does not use the demised space for carrying on its trade, industry, or business.

Sec. 101.06, Stats., and the orders of the industrial commission, set forth in the original opinion, required employers to provide approved safety devices and safeguards. Alternate devices are allowed and among the alternates are attachments for safety belts, which attachments shall be permanent and firmly attached to the window frame or the building proper. As such they would be incident to the construction and maintenance of the place of employment or public building. While other forms of safety devices could have been substituted no equally efficient alternatives were provided by anyone. In the absence of all such safety devices the building, and particularly the portion of the building involved in this accident, was deficient in construction and maintenance which is a breach of the duty of the owner "to construct, repair, or maintain such place of employment . . . as to render the same safe," and we adhere to our decision that under sec. 101.06, Lefeber Building Corporation was responsible as owner of the place of employment for providing permanent

fasteners unless other required protective devices were furnished.

The city made no motion for rehearing, although it filed a brief which it designates as one "on motion for rehearing." The only motion on file is that of Lefeber Building Corporation. It asked only that the judgment of the trial court with respect to that corporation be affirmed.

The motion is denied with $25 costs.