337 P.2d 394

Joe L. BARBER, Appellant,

v.

LOS ALAMOS BEVERAGE CORPORATION and Fireman's Fund Indemnity Company, Appellees.

No. 6203.

Supreme Court of New Mexico.

Jan. 23, 1959.

Rehearing Denied April 16, 1959.

O. Russell Jones, Jack Smith, Santa Fe, for appellant.

Catron & Catron, Santa Fe, for appellees.

SADLER, Justice.

Due to changing personnel of the Court and other fortuitous circumstances unnecessary to mention this case has come to rest on my doorstep since the new year. Accordingly, it fell to my lot to stop its meandering across the docket and prepare an opinion for disposition of the appeal. Now for the facts.

The case had its origin in the Atomic City of Los Alamos in the first judicial district. It is a workmen's compensation case in which a jury was demanded. At the close of plaintiff's case, the defendants moved for a directed verdict which motion the trial court granted and judgment was entered in their favor. Hence, this appeal.

The plaintiff, Joe L. Barber, lives in Los Alamos, New Mexico, and at the time of his injury was working regularly with the Fire Department of that city. On March 13, 1956, a fellow fire fighter, Wilbur L. Johnston, told plaintiff, a Mr. Kelch had called witness and wanted some extra men to work that day and asked him to come down to the beverage office, shortly after getting off from work and he, Johnston, would meet him there. Several of the employees of the Beverage Corporation held regular employment as firemen or security officers and worked at Beverage Corporation on their off duty time; Johnston be-

ing one of them. His call to the plaintiff was pursuant to the instructions from the manager of Los Alamos Beverage Corporation to get some "extra men" to work.

After receiving the request from Johnston, the plaintiff proceeded to the office of the Beverage Corporation and was there introduced to Mr. Raymond Kelch, its manager. As a matter of fact there were two warehouses paralleling one another with a long loading dock running in front of them of which the Beverage Corporation and PDQ Van and Storage Company made common use. Notwithstanding this close association between the two companies, the factual situation was further complicated in that Raymond Kelch was the manager for both companies. This was a fact not known by the plaintiff at the time of his employment.

The Los Alamos Beverage Corporation had an office in one of the two adjoining warehouses and the business of PDQ Van and Storage Company was conducted from this office. The employees of both companies used a time clock located in the Los Alamos Beverage Corporation office. Nevertheless, they were two separate and distinct corporations, the primary business of the former was the distribution of soft drinks and the handling and storing of soft drinks while the business of the latter was general warehousing, moving and storage. The two businesses were recognized by Raymond Kelch, the manager of each,

as separate and distinct. The Beverage Corporation was located and occupied premises known as 120–D. and PDQ was located at and occupied premises known as 120–C on 7th Street in Los Alamos under separate leases from the Zia Company. The two premises were separated by an intervening space,—a boiler room,—had no common entrance and no intercommunicating door.

As indicated above, there was a loading dock extending the full length of the building in which the two businesses referred to operated. Kelch, at all material times, manager of and operating both businesses, had formed an intention some three months previously to purchase both businesses.

Three witnesses testified touching the circumstances of plaintiff's employment. Kelch, the manager, testified he did not know who arranged for plaintiff to come down to work. Johnston testified that Kelch called him that morning, March 13, 1956, and asked him to get some "extra" men,— that he had some work to do "that day,"— some "extra" work, and that he, Johnston, told plaintiff Kelch wanted some more men to work "that day." The plaintiff, himself, confirmed Johnston's testimony that he was asked over the telephone by Johnston if he wanted to work *that day* and that he said he would like to do so.

When plaintiff arrived at the place of business of the Beverage Corporation, he

was introduced to Kelch. Kelch did not seem to remember whether he talked to plaintiff or not. Plaintiff said Kelch simply asked him if he "considered to work there that day." Kelch testified that he had no understanding with the plaintiff in regard to pay nor did he remember having informed plaintiff whom he was working for. There was no understanding between them before plaintiff started to work with regard to the nature of his employment or how long it was to continue or when he was to work.

Indeed, it was after March 13, the date of the accident, that he learned that Kelch was associated with Beverage and was also associated with PDQ; that Kelch never explained or said anything to him about there being two different concerns and plaintiff paid no attention to any difference between them. That he did not know for whom Kelch was acting when he was employed, simply thinking he would work for the business that Kelch was in.

The plaintiff was employed by Kelch in his capacity as manager of the Beverage Corporation, as he testified. Some furniture of Draggon Drug Company had been stored in the warehouse of Beverage Corporation and upon reporting for work the plaintiff was engaged in moving this furniture out of the warehouse of Beverage Corporation where it had enjoyed temporary haven onto the dock; thence in due course into the PDQ warehouse where it

was placed in storage for an indefinite period. It was while doing the latter with furniture from Beverage or from the moving van, next mentioned, that he suffered the injury on account of which the present claim was filed. Furthermore, at some time in the forenoon a moving van from Albuquerque arrived with furniture and the plaintiff was engaged for a time with another workman in moving and placing this furniture, or a portion of the load in the moving van into the PDQ warehouse.

The plaintiff testified concerning the work on which he was engaged at time of his injury, as follows:

"Q. Just what, exactly, were you doing when this injury occurred? A. We were placing a sofa or a couch, I don't know whether it would be termed which one, of the light foam rubber type, the newer type, up on a, I said a shelf, it was built about six feet high to get it off the floor to keep your covering from being torn. When the other man wasn't able to raise it on up, I was caught in an awkward position with it over my head and had to let it back down.

"Q. Who had directed you to do that, sir? A. Mr. Kelch had directed me to help this other man clean up the warehouses, store these overstuffed chairs and things off the floor onto this shelf built up.

"Q. Do you recall being paid for the work that you performed on the 13th, March 13th? A. Yes, sir.

"Q. I will hand you Plaintiff's Exhibit No. 2 and ask you to state whether you recognize your signature of endorsement on the back of that check? A. It is my signature.

"Q. Will you state whether that is a check that you did receive in payment for services? A. This is the check I received, yes, sir.

"Q. Have you ever drawn any pay from PDQ? A. No, sir.

"Q. Will you state whether the check identified as Exhibit No. 2 represents all of the pay that you received from Los Alamos Beverage Company? A. It is, yes, sir."

It appeared from the testimony, also, that a deposition had previously been taken and plaintiff was cross-examined in a spirited fashion relative to some testimony given in the deposition of which the following is an example:

"Q. Mr. Barber, you stated all of the work wasn't done in the PDQ warehouse. Then Mr. Catron asked you if the rest of it was out on the dock. Did you work any place other than this warehouse that you learned to be PDQ and the dock? A. We brought out, I don't remember what all, from the other warehouse, which they say now is the Los Alamos Beverage Company, to be stored and placed in the other warehouse.

"Q. Then was it your intention to answer Mr. Catron in such a way as to create an impression that all your work was right there at the PDQ warehouse? Did you understand my question? A. I didn't."

As shown hereinabove Kelch, himself, testified he employed plaintiff for Beverage Company and he was actually paid by that company for the short period of time he labored prior to his injury which took place near the noon hour. Yet, as the testimony disclosed, the plaintiff did not know for which of the two corporations he was working at the time he reported for work. The plaintiff, himself, so testified. It also appeared in evidence that in the cleaning up operation on which plaintiff testified he was engaged part of the morning, he moved a case or two of Coca-Cola, a product of Beverage Corporation's business from one location to another.

After his injury and during the afternoon of March 13th, the plaintiff was detailed to do some work at the home of Mr. Wilcoxen who is the president of the Beverage Corporation. At the close of the plaintiff's case, the defendants moved for a directed verdict upon grounds, among others, as follows:

"2. That, if plaintiff was, in effect, employed by the beverage com-

pany, he did not become a workman within the meaning of our Compensation Act and was not subject to the act, because the evidence, viewed in the light most favorable to plaintiff, shows that his employment was purely casual and not for the purpose of the beverage company's trade or business.

"3. If plaintiff was an employee of the beverage company and was a workman within the meaning of the act as the term workman is defined therein, the evidence viewed in the light most favorable to plaintiff shows that at the time of his injury he was not engaged in any work of the beverage company, but was, in fact, doing the work of PDQ Van and Storage, Inc."

The motion to direct a verdict was argued at length before the court and upon the conclusion of the argument, the court sustained the motion by directing a verdict for the defendants. Judgment in conformity with the verdict was duly entered and from which the plaintiff prosecutes this appeal.

At the beginning of their argument counsel for defendants in a three paragraph analysis summarize the evidence, as reduced to the material, ultimate facts, as follows:

"That Plaintiff was asked if he wanted to work 'that day' and volun-

teered to work 'that day.' That he was an extra man, employed to do extra work. That he had no arrangement or agreement with Kelch with respect to whom he was working for, what he was to be paid, who was to pay him, or that he was to work any longer than that one day.

"That he didn't even know that Kelch had any position with Beverage until after his accident, didn't know who Kelch was acting for, didn't know that there were two different concerns, and in fact thought that he was working for Kelch, personally, in whatever business Kelch was in.

"That the work Plaintiff was doing that day, and more particularly at the time of his injury and for some time prior thereto, was definitely work that pertained to the business and operations of PDQ, was being done in the PDQ warehouse, and was in no way related to the business and operations of Beverage."

On the whole we think the foregoing analysis of the testimony is fairly accurate. We shall not attempt to set out in detail the testimony from which the trial judge drew these ultimate conclusions beyond a reference to certain portions thereof as we develop the same in discussion. It is enough to state at the outset that we are fully convinced the plaintiff was a "cas-

ual" employee, as held by the trial judge, within the purview of 1953 Comp. § 59–10–12(i), reading:

"'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business. * * *"

In presenting his argument under this phase of the case, counsel for plaintiff cite the Colorado case of Lackey v. Industrial Commission, 80 Colo. 112, 249 P. 662, and the New Mexico cases of Williams v. Cooper, 57 N.M. 373, 258 P. 1139; McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867, and Wilson v. Rowan Drilling Co., 55 N.M. 81, 227 P.2d 367. The Colorado case, if anything, supports the judgment of the trial court on this appeal. Among other things the court said:

"* * * Jacks was employed by the day, not exceeding six days in all. When he left Lackey would tell him when to come back. Casual is an antonym of regular; Jack's employment was irregular and therefore casual. Lawlor was employed to relay some cement floor or driveway, to be paid by the day. When hurt he was helping to lay shingles because rain prevented work on the cement job.

By no process of reasoning can he be called a regular employee.

* * * * * *

"It is claimed that there is a question of fact here which the commission has decided. We do not think so. We think the facts are unquestioned, and that the only question is one of law—namely, what is the proper construction of the word 'casual' and the words 'usual course of trade?'"

The court in the Lackey case, among other things, held the employment was casual and reversed the judgment with instructions to the district court to set aside the award of the commission. Actually, the facts here are much stronger than in the Lackey case. There the workman was employed by the day not exceeding six days in all. When he left Lackey would tell him when to come back. Here, there was an employment for one day only for certain, the employee being injured on the first day of his work. Compare, Sanchez v. Board of County Commissioners, 63 N. M. 85, 313 P.2d 1055.

The New Mexico cases cited are not in point but nothing in any of them is authority against the position upheld by the trial judge in this case now before us. Williams v. Cooper, dealt with facts where a defendant operated a farm as his general occupation and as a side line operated a dance hall, and had hired plaintiff, a car-

penter, to construct an addition, thereto, was neither an "employer," nor engaged in an "extra-hazardous occupation" within Workmen's Compensation Act. Judgment for an award was reversed and the complaint ordered dismissed. Neither McKinney v. Dorlac nor Wilson v. Rowan Drilling Company have any bearing on the portion of the Act accepting from its provisions "a person whose employment is purely casual and not for the purpose of the employer's trade or business." 1953 Comp. § 59–10–12(i).

When the plaintiff had rested the trial judge in granting the motion for directed verdict, said:

> " * * * I can't help but be convinced that from the evidence he was a casual employee *and* he was not, when he was injured, working for the Beverage Company's trade or business * * *."

On that short, terse statement, we think, rests the rationale of the trial court's action in directing a verdict against the plaintiff. While it is strongly urged by counsel for defendants evidence is lacking that an employer-employee relationship existed between plaintiff and the Beverage Corporation, plaintiff, himself, saying he did not know there were two separate companies, or if he had known, which of them he was working for; that all he knew, or had in mind, was that he was working for Kelch, or whatever organization Kelch served; (and he served them both)—we do not choose to rest the result we declare upon this ground.

Even if an employer-employee relationship did exist, the evidence is so overwhelming that plaintiff was a person whose employment was "purely casual" and not for the purpose of the employer's trade or business, within the purview of 1953 Comp. § 59–10–12, and that, treated as an employee of Beverage Corporation, he was at the time of the injury on loan from it to the PDQ Storage Company, or "special" employee of the latter company, that we prefer to rest our opinion on those two considerations.

Giving due effect to the testimony of the witness, Johnston, through whom any relationship of employer-employee was effected, if at all; that of plaintiff, himself, and of Kelch as to what occurred prior to the time plaintiff went to work (and it stands undisputed); plus the additional, uncontroverted fact, that plaintiff was at time of the injury performing work for benefit of PDQ warehouse, we fail to see how it can be successfully maintained plaintiff's employment was other than casual.

The witness, Johnston, testified Kelch called him that same morning, March 13th, and asked him to get some "extra" men,—that he had some work to do "that day,"

some "extra" work; that he told plaintiff that *Kelch* wanted some more men to work "that day."

Plaintiff, himself, testified that he was asked over the telephone by Johnston if he wanted to work "that day" and that he said he would like to; that he was called and asked if he wanted to work "that day" and he volunteered to work "that day"; that when he reported for work Kelch simply asked him if "he considered to work there *that day.*"

For authorities supporting the conclusion we reach in holding the plaintiff's employment was "purely casual," see, Moore v. Clarke, 171 Md. 39, 187 A. 887, 107 A.L.R. 924, 933; Orr v. Boise Cold Storage Co., 52 Idaho 151, 12 P.2d 270; Gibbons v. Roller Estates, 163 Tenn. 373, 43 S.W.2d 198; Sommerville v. Industrial Comm., 113 Utah 504, 196 P.2d 718; compare, County of Leon v. Sauls, 151 Fla. 171, 9 So.2d 461.

Furthermore, if in any circumstances the plaintiff may be considered an employee of the Beverage Corporation, the evidence is conclusive that at the time of his injury he was engaged on work for the benefit and advantage of PDQ Corporation and must be deemed to have been on loan from the Beverage Corporation to PDQ as a "special" employee. Hence, his injury did not arise out of, or in the course of his employment, by the Beverage Cor-

poration, and he was not when he was injured "working for the purpose of Beverage's trade or business." See, 35 Am. Jur. 455, § 18 (Master & Servant); Dunham v. Walker, 60 N.M. 143, 288 P.2d 684, 688; Compare Walker v. Woldridge, 58 N.M. 183, 268 P.2d 579; Allen-Garcia v. Industrial Commission, 334 Ill. 390, 166 N. E. 78; Jones v. George F. Getty Oil Co., 10 Cir., 92 F.2d 255.

As we said in Dunham v. Walker, supra:

"It being so obvious from foregoing testimony that the Billy Walker winch truck was detained under the circumstances shown to assist in the work of unloading sills from a Howard Holmes truck, and all details and direction of the work being under the direct supervision of two drilling superintendents and a tool pusher of the Howard Holmes Company, it is easy to understand the contention of counsel for defendant, with which we are compelled to agree, that for purposes of the work underway, the driver of the Billy Walker truck became a special employee of Howard Holmes Drilling Company. If he was, then his acts became those of his special employer by reason whereof no liability in the premises can attach to Billy Walker for the negligence, if any, of the driver of the Billy Walker winch truck so engaged."

The facts in the case at bar are most unusual in that Kelch, the manager of both companies, operated in a dual capacity. Figuratively, he wore two hats—a "beverage" hat and a "PDQ" hat. Inasmuch as the office of both companies was on the premises of the Beverage Corporation, when he was engaged in its work he wore the Beverage hat but when "in or out of the common office," he turned his hand to attend affairs of the PDQ Company, he became garbed in the PDQ hat. This in itself complicated matters enough, but when we remember both companies had their offices in the same building on the Beverage property, that on occasion work done for the one company was paid by checks of the other, and vice versa,—we have only confusion worse confounded.

This record presents a tangled web of facts, rendering most difficult the sifting and isolation of the decisive ones which dictate a certain result. Viewed, however, from any standpoint, this much stands out in the record—that plaintiff was regularly employed on another job; that this particular work was undertaken on a call for "extra" men on off duty hours from the regular job; that even assuming him to be an employee of Beverage Corporation, he was doing work for another company away from the premises of his employer, inside the other's premises, and had been so engaged for some unnamed, uncertain time, when his injury occurred.

A careful review of the entire record satisfies us the trial was free from error and that the judgment should be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

CARMODY, J., having tried the cause below, did not participate.