386 P.2d 602

**Clarence BROWN, Claimant, Plaintiff-Appellee,**

**v.**

**POT CREEK LOGGING & LUMBER COMPANY, Inc., Employer, and New Amsterdam Casualty Company, Insurer, Defendants-Appellants.**

**No. 7037.**

Supreme Court of New Mexico.

Sept. 16, 1963.

Rehearing Denied Nov. 19, 1963.

Seth, Montgomery, Federici & Andrews, Fred C. Hannahs, Santa Fe, for appellants.

Edwin L. Felter, Santa Fe, for appellee.

SAMUEL Z. MONTOYA, District Judge.

This is an appeal from a judgment of the district court of Sandoval County in a workmen's compensation case tried before a jury wherein the jury returned a verdict in favor of the claimant-appellee. For convenience herein the claimant-appellee will be referred to as the claimant and the defendants-appellants will be referred to as the defendants.

The claimant was employed until July 31, 1959, in a supervisory capacity by the defendant Pot Creek Logging & Lumber Company, which employment, except as hereinafter stated, commenced in 1956. However, from April, 1958, claimant had been employed by the Fort Garland Timber Company at Fort Garland, Colorado, until the end of 1958, but had returned to his employment with Pot Creek Logging & Lumber Company on February 15, 1959. Both employers were separate and distinct corporations, or legal entities, and Mr. George Lavender was president of both organizations, as well as being the claimant's immediate superior, or supervisor. Claimant had, in the past, performed services for both organizations, even though receiving payment for said services from only one organization. Shortly before the accidental injury in question, the Fort Garland Timber Company was sold, the transaction being completed on March 20, or 21, 1959, and the Fort Garland Corporation was dissolved in April of 1959.

It appears that one week prior to March 22, 1959, Lavender instructed the claimant to remove his personal belongings from the offices of the Fort Garland Timber Company at Fort Garland, Colorado, located eighty miles north of Taos, New Mexico, and permitted him to use a Pot Creek Logging & Lumber Company car for that purpose. The claimant was employed at the said time by the Pot Creek Logging & Lumber Company at its facilities located at Taos. Claimant left Taos on Sunday, March 22, 1959, at 11:00 A. M., or 11:30 A. M., to drive to Fort Garland for the purpose indicated, using the company car. Enroute, claimant stopped in San Luis, Colorado, 16 miles from Fort Garland, to visit with friends.

Thereafter, claimant proceeded to Fort Garland and went to the Fort Garland Timber Company yard to check on his personal belongings, as well as tools, and to inquire from the new owners how soon it would be necessary to remove his belongings. The new owners, who had purchased the Fort Garland Timber Company, could not be located, and claimant visited a bar, then drove back to San Luis to see his friends, the Durans, and make arrangements for the removal of his belongings from the premises of the Fort Garland Company. Later on in the afternoon, he returned to Fort Garland and could not, again, locate the owners, and visited with friends at that locality. During the course of the day, claimant testified he probably had five beers from the time he arrived until late at night, around 10:00 o'clock or 11:00 P. M. During the process of checking on his personal belongings, which claimant did not remove, he went over to the planing mill and picked up some socket wrenches and a big special wrench, which he put in the back end of the car asserting they could be used at Taos by the Pot Creek Logging & Lumber Company.

Claimant finally left Fort Garland to return to Taos, and just north of Questa the company automobile, driven by the claimant, overturned resulting in the injuries to the claimant. The parties have stipulated that as a result of those injuries the claimant was permanently and totally disabled, without any admission of liability on the part of the defendants. After the accident, claimant was taken to the hospital at Taos where he remained three days, and then was transferred to the Presbyterian Hospital, and later to the Craig Rehabilitation Center in Denver. While at the Taos Hospital, Lavender personally visited the claimant and talked to his attending physician. He also viewed the car involved in the accident. Subsequently, Lavender visited the claimant at the Presbyterian Hospital within ten days after the accident, and later also visited claimant while confined at the Rehabilitation Center at Denver.

The undisputed facts further disclose that claimant remained on the payroll of the defendant Pot Creek Logging & Lumber Company through July of 1959. During the pendency of this appeal, the claimant died and Clarence George Brown, his son, who is also the administrator of the estate, was substituted in his place and stead. This appeal followed from a verdict in favor of the claimant.

This appeal is based on four points, as follows:

POINT I: Point I asserts that there is substantial evidence that claimant was a "special employee" of a corporation other than the defendant at the time of his injuries; and, that there is no substantial

evidence to the contrary supporting the verdict of the jury.

POINT II: Point II asserts that the primary purpose of claimant's trip was a mission of his own, and that the injuries sustained did not arise out of and in the course of his employment.

POINT III: Point III asserts that written notice of claimant's accident and injuries was required, there being no actual knowledge thereof on the part of the employer.

POINT IV: Point IV asserts that the trial court erred in giving its Instruction Number 19 concerning actual notice alleging it is an incorrect statement of the law, and in conflict with the trial court's Instruction Number 18.

The claimant-appellee, on the other hand, contends that the verdict is supported by substantial evidence that claimant was an employee of the defendant and sustained the disability in question while in the course of his employment for such employer. Claimant also contends that the defendant employer had complete actual notice of the claimant's injuries within ten days after the accident; and, therefore, written notice was not required. Claimant further contends that all instructions of the court were proper and that the giving of Court's Instruction Number 19 was not error.

The first, and most vigorously argued point asserted by defendants, rests on the contention that there is no substantial evidence in the record to support the verdict of the jury by reason of the fact that there is substantial evidence that claimant was a "special employee" of the Fort Garland Timber Company; and, therefore, could not recover from the defendant under the Workmen's Compensation Act of New Mexico.

We agree with the rule stated by claimant, that where a verdict is supported by substantial evidence it will not be disturbed on appeal. The other well-recognized rule of appellate practice is that where a verdict is attacked on appeal as not being supported by substantial evidence, we must view the evidence, and all inferences flowing therefrom, in a light most favorable to appellee, and to the validity of the verdict. (Apodaca v. Allison & Haney, 57 N.M. 315, 258 P.2d 711; Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136.)

Chief reliance is placed by counsel for defendant on the case of Barber v. Los Alamos Beverage Corporation, 65 N.M. 323,

337 P.2d 394. In that case, as here, the issue arose as to whether an employer-employee relationship existed at the time of the injury and whether the injury in question arose in or out of the course of the employment. In that case, defendants moved for a directed verdict at the close of plaintiff's case, which motion was granted, and judgment entered in defendant's favor, which ruling was appealed.

Because we feel that Barber v. Los Alamos Beverage Corporation, supra, and the instant case present the same issues and are so nearly in point as to the facts, it may be well to set out the factual situation and the disposition made by this court. There, as in the instant case, the plaintiff filed a workmen's compensation claim against the defendant Beverage Corporation. Plaintiff in the Los Alamos case was regularly employed as a fireman, and upon being informed by a co-employee that a Mr. Kelch needed some extra men to work that day and to meet Mr. Kelch for that purpose in the Beverage Corporation office, plaintiff went to the office and met Mr. Kelch. The same time clock was used for the employees of Los Alamos Beverage Corporation and PDQ Van and Storage Company, although they were two distinct corporations, one being in the distribution, storage and handling of soft drinks business, while the PDQ Company was in the general warehousing, moving and storage business. Plaintiff did not know for whom Kelch was

acting when he was employed, but plaintiff was directed to move furniture from the Beverage Company warehouse where it had been temporarily stored to the common loading dock, thence to the PDQ warehouse wherein it was to be stored for an indefinite period. Sometime in the forenoon, a moving van was also unloaded, and furniture, or a part thereof, placed in the PDQ warehouse. While so engaged in moving the furniture mentioned, the plaintiff was injured. It is to be noted that the plaintiff, when finally compensated for his services for the work performed as hereinabove stated, was paid with a Beverage Corporation check. The court, on the basis of the above facts, held that the plaintiff was a "special employee" of the PDQ Van and Storage Company, stating as follows:

"Furthermore, if in any circumstances the plaintiff may be considered an employee of the Beverage Corporation, the evidence is conclusive that *at the time of his injury he was engaged on work for the benefit and advantage of PDQ Corporation and must be deemed to have been on loan from the Beverage Corporation to PDQ as a 'special' employee. Hence, his injury did not arise out of, or in the course of his employment, by the Beverage Corporation, and he was not when he was injured 'working for the purpose of Beverage's trade or business.'* See, 35 Am.Jur. 455, § 18 (Master & Servant); Dun-

ham v. Walker, 60 N.M. 143, 288 P.2d 684, 688; Compare Walker v. Woldridge, 58 N.M. 183, 268 P.2d 579; Allen-Garcia v. Industrial Commission, 334 Ill. 390, 166 N.E. 78; Jones v. George F. Getty Oil Co., 10 Cir., 92 F. 2d 255.

\*    \*    \*    \*    \*    \*

"The facts in the case at bar are most unusual in that *Kelch, the manager of both companies, operated in a dual capacity. Figuratively, he wore two hats—a 'beverage' hat and a 'PDQ' hat. Inasmuch as the office of both companies was on the premises of the Beverage Corporation,* when he was engaged in its work he wore the Beverage hat but when 'in or out of the common office,' he turned his hand to attend affairs of the PDQ Company, he became garbed in the PDQ hat. This in itself complicated matters enough, but when we remember both companies had their offices in the same building on the Beverage property, that on occasion work done for the one company was paid by checks of the other, and vice versa,—we have only confusion worse confounded.

"This record presents a tangled web of facts, rendering most difficult the sifting and isolation of the decisive ones which dictate a certain result. Viewed, however, from any standpoint, this much stands out in the record—that plaintiff was regularly employed on another job; that this particular work was undertaken on a call for 'extra' men on off duty hours from the regular job; that even assuming him to be an employee of Beverage Corporation, he was doing work for another company away from the premises of his employer, inside the other's premises, and had been so engaged for some unnamed, uncertain time, when his injury occurred." (Emphasis added.)

This court concluded in the above mentioned case that the trial court was correct in directing a verdict against the claimant, holding that the injury did not arise out of, or in the course of, his employment by the defendant, and that he was not, when he was injured, "working for the purpose of the Beverage Corporation's trade or business."

The facts in the two cases are so closely akin as to make the Barber v. Los Alamos Beverage Corporation case, supra, decisive of this case, as we shall presently show. In the instant case, though the claimant was a general employee of the Pot Creek Logging & Lumber Company, the mission that he was on when the accident and injuries occurred could not have been for the benefit of any other organization excepting the Fort Garland Timber Company, even without considering the question that he might possibly have been engaged on a personal mission. The employment, and for the pur-

poses of this appeal we assume that there was such employment, takes on the character of a "borrowing" by the Fort Garland Timber Company when Mr. Lavender ordered the claimant to do something for the Fort Garland Timber Company, and further that the removal of Mr. Brown's personal goods from the Fort Garland Timber Company related solely to the business of the Fort Garland Timber Company. To the same effect was Mr. Lavender's testimony that on the trip where the accident occurred, the claimant went after his own things, not Lavender's things, and that the orders Lavender gave to the claimant to go to the Fort Garland Timber Company plant were not as an officer of the Pot Creek Logging & Lumber Company, but that it was on Fort Garland Timber Company business in the state of Colorado. The claimant himself testified that he thought at the time of the accident everything had been removed that belonged to the Fort Garland Timber Company from the premises in Colorado, and all that remained was his own personal furniture. With respect to the tools he is alleged to have picked up on the Fort Garland trip, the claimant testified that they belonged to the Fort Garland Timber Company. Mr. Lavender further testified that all of the property belonging to the Fort Garland Timber Company was removed from those premises, and whatever items remained had been sold with the lumber plant.

As pointed out in the case of Dunham v. Walker, 60 N.M. 143, 288 P.2d 684, this court, in discussing what tests are to be applied in determining whether the relationship of a "special employee" exists, quoted with approval from the case of Jones v. George F. Getty Oil Company, 10 Cir., 92 F.2d 255, as follows:

"The controlling factor is: For whom is the work being performed, and who had the power to control the work and the employee? The authority to determine the work to be done, and the manner in which it is to be carried on, necessarily includes the right to suspend or terminate the work altogether or, possibly, to exclude the particular employee from the job, * * *."

Stated differently in the case of Weese v. Stoddard, 63 N.M. 20, 312 P.2d 545, in considering the test for determining whether a general servant of one employer can become the special or particular servant of another, this court said:

"* * * The controlling factor in determining this question is: Whose work is being performed and who controlled and directed the agent in his work? * * *"

See also 35 Am.Jur., Master and Servant, § 541.

Applying the foregoing tests to determine what the relation of the claimant was to the defendant corporation, we are

persuaded to hold with the appellant, that the claimant Brown was a "special employee" of the Fort Garland Timber Company at the time of his injuries. This much stands out in the record—that claimant was regularly employed by the defendant corporation, that this particular work or employment was undertaken on off-duty hours (Sunday) from the regular job, that he was doing work for another corporation away from the premises of his regular employer and was so engaged when his injury occurred. Under the circumstances, we must conclude that the evidence viewed in the light most favorable to the appellee, and in support of the verdict, does not support a holding that the claimant was, at the time of his injury, an employee of the defendant corporation.

Serious consideration has been given to many authorities cited by appellees, but we deem the same not persuasive by reason of the cases from this jurisdiction applicable to the factual situation in the instant case.

We are not unmindful that the trial court approved the jury's verdict in denying the motion for judgment notwithstanding the verdict, or the alternative motion for a new trial. The facts surrounding the injury in this case, viewed in the most favorable light to the claimant, differ from those present in the case of Barber v. Los Alamos Beverage Corporation, supra, only in that the directions given to the claimant in the latter case were given by the manager of both corporations, while in the instant case it was the president of both corporations who issued the instructions or directions to the employee suffering the injuries. One other difference that may be noted is that in the instant case the claimant knew of the position and authority occupied by Mr. Lavender, who directed him, whereas in the Los Alamos Beverage Corporation case, supra, claimant did not know the status or authority of Kelch, the manager. In the case of Barber v. Los Alamos Beverage Corporation, supra, the trial court sustained a motion for a directed verdict at the close of the plaintiff's case, and on appeal that ruling was affirmed. We are of the opinion that the proven facts in this case, under the decisions of this court, do not merit a different result, and a review of the evidence convinces us that there is no substantial evidence to support the jury's verdict.

Defendant argues several other grounds for reversal, but in view of our conclusion as hereinabove set out it is not necessary to consider or discuss them. In view of the foregoing, the cause is reversed and remanded, with instructions to set aside the judgment for the claimant-appellee, and to enter judgment for the defendants, dismissing the action. It is so ordered.

CHAVEZ and MOISE, JJ., concur.