546 P.2d 873

**George BARGER, Plaintiff-Appellee,**

**v.**

**FORD SALES COMPANY, INC., Employer, and Fireman's Fund American Insurance Companies, Insurer, Defendants-Appellants.**

**No. 2140.**

Court of Appeals of New Mexico.

Feb. 3, 1976.

Certiorari Denied March 2, 1976.

Michael P. Watkins, Oldaker & Oldaker, Albuquerque, for defendants-appellants.

Fred M. Calkins, Jr., George A. Morrison, Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendants appeal an adverse judgment awarded plaintiff under the Workmen's Compensation Act. They contend that (1) plaintiff was not an employee of Ford Sales Company, Inc. (Ford); (2) that if plaintiff was an employee, he was under "casual employment"; (3) plaintiff was an independent contractor; and (4) plaintiff was not 40% disabled. We affirm.

*Findings of Fact*

The trial court found:

1. That on April 13, 1972, plaintiff was hired by Ford to unload a truckload ship-

ment of doughnut mix and place it in Ford's warehouse.

2. That plaintiff was under the supervision and control of Ford and used its equipment to unload the truck.

3. That plaintiff injured his back while unloading and suffered 40% total permanent disability.

*Facts to Substantiate the Findings*

In April, 1972, plaintiff was hired as a relief driver for Roadrunner Rentals and Equipment, Inc. (Roadrunner). In El Monte, California, plaintiff and another driver picked up a load of doughnut mix consigned to Ford and delivered it to the Ford dock on the morning of April 13, 1972. It was Ford's duty to unload the truck and stack the sacks of doughnut mix in the warehouse. Mr. Ford told plaintiff he was sorry that no one was available to unload the truck, and Ford asked plaintiff to unload the truck for $20.00. Plaintiff accepted. Plaintiff unloaded the truck by himself with the use of Ford's pallet. While in the warehouse, Mr. Ford told plaintiff to take two or three layers of the doughnut mix from the pallet and stack it on top of the old bags. While doing this, plaintiff suffered his back injury.

A. *Plaintiff was an employee of defendant Ford.*

Section 59–10–12.9, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1) reads:

As used in the Workmen's Compensation Act, unless the context otherwise requires, "workman" means any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business. The term "workman" shall include "employee" and shall include the singular and plural of both sex.

Plaintiff, as a general employee of Roadrunner, became a "special employee" of Ford as to the work at hand. This work was "for the purpose of the employer's trade or business." When plaintiff went to work for Ford, Ford became liable under the Workmen's Compensation Act. *Dunham v. Walker,* 60 N.M. 143, 288 P.2d 684 (1955). On the "special employee" question, ". . . the length of time is not the test. Whether the injured person had been doing this work for five or fifty minutes, and whether he would have continued in this work for a shorter or greater length of time in no way changes the test. That test is: Whose work was being done at the time of the accident?" *Wuertz v. Howard,* 77 N.M. 228, 230–31, 421 P.2d 441, 442 (1966).

We have also said that "The primary test to determine employment status is the right to control the details of the work." *Perea v. Board of Torrance County Commissioners,* 77 N.M. 543, 545, 425 P.2d 308, 309 (1967); *Brown v. Pot Creek Logging & Lumber Company,* 73 N.M. 178, 386 P.2d 602 (1963).

Substantial evidence established that Ford had the right to control the work and that plaintiff was an employee of and under the supervision of Ford at the time of the accident.

(1) *Plaintiff was not a "casual" employee.*

Plaintiff was not a "casual" employee. Section 59–10–12.9, supra, contains two provisions which make an exception to the word "workman". (1) The person's employment must be purely casual, and (2) the employment must not be for the purpose of the employer's trade or business. Plaintiff's employment, which consisted of stacking sacks of doughnut mix in Ford's warehouse, *was* for the purpose of defendant Ford's trade or business.

Defendant Ford contends that it was not in the business of unloading trucks. Unloading trucks may not have been its business, but the evidence established that unloading this truck was its duty. However, Ford was in the business of putting its merchandise in its warehouse for use in the operation of its business. Ford carried

on these activities. Plaintiff performed these activities. See, *Abbott v. Donathon,* 86 N.M. 477, 525 P.2d 404 (Ct.App.1974).

(2) *Plaintiff was not an independent contractor.*

■ Plaintiff was not an independent contractor. The distinction between an employee and an independent contractor is ofttimes difficult to determine. The various definitions of an independent contractor are set forth in *Shipman v. Macco Corporation,* 74 N.M. 174, 392 P.2d 9 (1964). In the instant case, plaintiff was not in the business of unloading the truck, carrying the sacks into the warehouse and stacking them. Plaintiff was subject to the right of Ford to control the manner and means of performing these duties. Ford gave plaintiff instructions. These facts made plaintiff an employee, not an independent contractor.

B. *Plaintiff was 40% disabled.*

Section 59–10–12.19, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1) provides:

As used in the Workmen's Compensation Act, . . . "partial disability" means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage-extent to perform the usual tasks in the work he was performing *at the time of his injury and* is unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience. [Emphasis added]

This statute contains two tests, divided by the word "and" as emphasized. *Medina v. Zia Company,* 544 P.2d 1180 (N.M.Ct. App.1975).

Plaintiff suffered a ruptured lumbar disc.

Under the first test which refers to the work performed at the time of the injury, medical testimony established that plaintiff could do only sedentary work such as answering phones and sitting at a desk. He will not be able to do any heavy lifting unless he has both discs fused. Medical testimony established that plaintiff could not lift heavy sacks like those in this case. He was partially disabled.

Under the second test, which refers to work for which he is fitted, the record shows that plaintiff was working as security personnel at the Albuquerque Alcoholic Treatment Services. This work consisted of watching the building, checking doors at the offices, and watching patients to make sure they didn't get out of hand. Plaintiff said, "Just an easy job, you know."

However, sometimes, when he worked strenuously he had so much pain he could not stand it. He lost no time from work but he did not absent himself because he was afraid to lose his job.

Defendant Ford's medical expert testified that plaintiff "had about a 20 percent overall permanent partial physical impairment"; that chances of it getting better were not very good; that if plaintiff came up for a job that required any physical labor, confirmed by pre-employment examination, he would not get the job.

■ The only issue under the second test is whether plaintiff is unable to some percentage-extent to perform any work for which he is fitted, by reason of "general physical and mental capacity". Plaintiff's pain did establish inability to some percentage-extent to perform his work. He had a right to remain in his employment to protect his job. The trial court found plaintiff 40% disabled. We cannot find this percentage unreasonable.

Plaintiff is awarded $750.00 for attorneys' fees on this appeal.

Affirmed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.