HENRY FISHER v. HERMAN H. MANZKE
AND ANOTHER.[1]

October 25, 1940.

No. 32,426.

[1]Reported in 294 N. W. 477.

*A. P. Rickmire,* for relators.
*J. Frank Boyles,* for respondent.

HOLT, JUSTICE.

*Certiorari* to review an award of compensation made by the industrial commission.

Respondent, in replacing screens by storm windows on apartment buildings owned and operated by relators in the city of Minneapolis, accidentally broke his ankle. His application to the industrial commission resulted in an award of compensation against relators. They assert that the evidence conclusively shows that respondent was an independent contractor and not an employe of relators; secondly, that relators are not within the workmen's compensation act because the employment was casual and not in the usual course of the trade, business, profession, or occupation of relators. 1 Mason Minn. St. 1927, § 4268. If either contention is sustained the award cannot be sustained.

Relators say the finding "that on Nov. 5, 1938, Henry Fisher was employed under a Minnesota contract of hire by Herman H. Manzke and Liby Manzke at a weekly wage of $30.00" is not warranted by the evidence; and that the commission erred in failing to find that respondent was an independent contractor in respect to the work he was doing

when the accidental injury was suffered. No particular fault is found with the amount of the award.

Relators, husband and wife, owned and operated two three-story buildings, each containing 24 apartments for renting purposes, at 1706-08 and 1710-12 Elliot avenue, Minneapolis. Respondent contacted them and agreed to remove the screens and wash and put on the storm windows at a certain price per window. He could do this work at odd times when not in his regular employment. While engaged in this work he slipped and broke his ankle. It is argued that since respondent could work at this job when not in his regular work and was paid so much per window, he was not an employe but an independent contractor. Respondent was an ordinary laborer and not a contractor. It appears that relators furnished the ladders, pails, rags, soap, and putty needed to do the work. The job was rather small, amounting to only $32.60. It is urged that it is indicative of an independent contractor that when respondent became disabled he got others to finish the work, paid them, and collected from relators the entire amount of the job. However, respondent testified that relators asked him to get someone to finish, because they did not know of anyone they could get to do it. It seems to us that the finders of fact were well warranted in finding that there was an employment rather than that of an independent contractor. No doubt relators could have dismissed respondent at any stage of the work. We think Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608; Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464; Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436, 437; and Cardinal v. Prudential Ins. Co. 186 Minn. 534, 243 N. W. 706, sustain the commission in refusing to find that respondent was an independent contractor. In the Carter case the court said [186 Minn. 415]:

"Window washing is humble work, performed mostly by hand labor. It is usually done by servants, janitors, or

cleaners hired by the owner or occupant of the building. It may be a part of the services for which a janitor or servant is regularly hired, or it may be the only service for which a person is hired. It may be paid for by being included in the monthly or weekly wages of a servant, or it may be paid for by the day, hour, or so much per window, or so much for a building."

This language may be applied as well to the work of taking off and putting on screens and storm windows. Relators rely on Lange v. American Spawn Co. 194 Minn. 342, 260 N. W. 298, but the facts there are not like those in the case at bar. It was repair work where Lange was to furnish all the material and labor for a lump sum. We said [194 Minn. 343]:

"This case does not come within the piecework principle, nor those where the employe, in addition to his own work, furnishes team and rig and is paid by the load, cord, or ton, nor those where the one engaged makes an estimate of cost of work and materials but enters no definite agreement to do it for the estimate and is paid by the hour."

There can be no doubt that the employment of respondent was casual; but to take relators outside the workmen's compensation act the evidence must also show that the employment was "not in the usual course of the trade, business, profession or occupation of his employer." Relators claim that respondent's employment was not in the usual course of their business or occupation. They cite and rely on Eichholz v. Shaft, 166 Minn. 339, 208 N. W. 18; Sink v. Pharaoh, 170 Minn. 137, 212 N. W. 192, 50 A. L. R. 1173; Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426; Jackson v. Cathcart & Maxfield, Inc. 201 Minn. 526, 277 N. W. 22; and Chisholm v. Davis, 207 Minn. 614, 292 N. W. 268. The Eichholz case held that the employment was as caretaker of a summer home, and caring for such a home was not in the usual course of the owner's business.

The other above cited cases turned on the proposition that the employment was not in the usual course of the employer's trade, business, profession, or occupation. In the instant case the evidence shows that, although relators some 20 years or more ago were farmers and still own a farm from which some rent is received, for the last 16 years their usual business and occupation from which their livelihood is obtained has been the ownership and letting for rent of apartment buildings in the city of Minneapolis. Previous to owning the two buildings on Elliot avenue, they had owned two such buildings a block farther south on that avenue, and also an apartment building on Hennepin avenue. The two buildings where respondent was injured brought an income of $700 a month when all apartments were occupied. The evidence also tended to show that in addition to their living relators had been able to reduce the encumbrances on the apartment buildings they owned and conducted. We think the evidence warranted the conclusion of the commission that relators were under the workmen's compensation act, and the award must stand.

The writ is discharged and $75 attorneys' fees may be taxed as costs by respondent.