# HELMER AMUNDSEN v. REX POPPE AND ANOTHER.[1]

October 29, 1948.

No. 34,681.

*O. A. Brecke,* for relator.

[1]Reported in 34 N. W. (2d) 337.

*Thompson, Hessian, Fletcher & McKasy, Strong, Strong & Tully,* and *Maurice A. Hessian, Jr.,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the industrial commission affirming a referee's determination that relator was not within the coverage of the workmen's compensation act on the basis of its finding that at the time of the injury relator's employment was casual and not in the usual course of the trade, business, profession, or occupation of his then employer.

Relator, Helmer Amundsen, a carpenter by trade, filed his petition with the industrial commission to recover compensation alleged to be due him as a result of injuries to his back sustained on December 18, 1946, while in the alleged employ of respondents, Frederick H. Poppe and his son, Rex Poppe. There is no insurer.

The referee found that on and prior to December 18, 1946, Amundsen was in the employ of respondent Rex Poppe under a Minnesota contract of hire and that on that date Amundsen sustained an accidental injury arising out of and in the course of his employment. The referee ordered the petition as to Frederick H. Poppe dismissed, apparently on the ground that there was no employment of relator by him. With respect to respondent Rex Poppe, the petition was denied on the ground that relator's employment was casual and not in the usual course of the trade, business, profession, or occupation of his then employer.

The questions for consideration on this appeal are:

(1) Was relator an employe of respondent Frederick H. Poppe at the time of his injury?

(2) Was relator's employment at the time of the accident casual?

(3) Was the employment of relator at the time of the accident in the usual course of the trade, business, profession, or occupation of his then employer?

The facts out of which this claim for compensation arises are these: Amundsen, a carpenter who had worked at his trade by the day and under contract for many years, advertised for carpentry

work through a newspaper in mid-August 1946. In response to this advertisement, he was contacted by Rex Poppe and called on the latter at his home at 2829 Zarthon avenue, St. Louis Park, at which time Amundsen claims that Frederick H. Poppe was also present. As a result of this call, Amundsen undertook a small job of installing pine paneling in the basement of the Rex Poppe home on 2829 Zarthon avenue. This work was started August 17 or 18, 1946, and lasted for about a week. During the course of this work, Rex showed Amundsen an old house on Alabama avenue which he had purchased and was going to move to a vacant lot on 3968 Zarthon avenue. He wanted this old house completely remodeled. Amundsen testified that Rex wanted him to take this work on contract, but that he refused, as he could not determine in advance the amount of work which would be required, and that they finally agreed that the job would be done on a basis of $15 per day for an eight-hour day. There was testimony to the effect that the compensation was to be $90 for a full six-day week, although the referee found that Amundsen's wages were to be $76.50 for a six-day week. Amundsen testified that he commenced the remodeling of the so-called "old" house in the early part of September 1946 and that between that time and the day he was injured, December 18, 1946, he worked on this job about 12 weeks. He said that during this time he did another job across the street, which took about four days to complete. This work was done while the old house was being moved to the new location. He further testified that he did a few other small jobs between the time he installed the paneling job at Rex's home at 2829 Zarthon avenue and the remodeling job. The checks received by Amundsen during this period of over three months were in excess of $1,000. It appears that on the house that was remodeled Amundsen did practically all the manual work, except for such trades as plumbing and foundation work and minor assistance from respondents themselves. He testified that he worked under the direction of respondents and that he had no control over the other trades.

Rex Poppe is about 26 years of age and is the son of Frederick H. Poppe, a practicing physician in Minneapolis. In 1945, Rex, who

was employed as transportation agent for Northwest Airlines, was transferred from the Chicago office to the Minneapolis office. He and his wife and baby moved in with Rex's father at 4100 Colfax avenue south, Minneapolis. Thereafter, financed by a loan from his father, Rex hired a contractor (not relator) to build a home for him at 2829 Zarthon avenue. Rex and his family moved into this home in June 1946. This is the place where relator installed the pine paneling in the basement. In 1947, Rex sold his home at 2829 Zarthon avenue at a price somewhat in excess of its cost. He testified that the reason he had to sell this house was that the payments on it were more than he could afford on the salary he was then getting; that he originally estimated that the house would cost him approximately $8,000, but that the increased building costs and shortages brought the cost up to around $12,000. After this sale, Rex and his family again moved in with his father, pending completion, according to Rex's testimony, of the house he had purchased on Alabama avenue and which was to be moved to the vacant lot at 3968 Zarthon avenue and remodeled. It was on this latter house that relator was working at the time he was injured.

Rex terminated his employment with Northwest Airlines sometime in March 1946 and then went to work as a salesman for the Spring Realty Company on a commission basis. He testified that he ran across the old house on Alabama avenue during the course of his employment with the realty company. He said that he first tried to sell the house to a prospect for the then owner, but that the deal fell through, so he purchased it himself and had it moved to 3968 Zarthon avenue. He further said that when the remodeling job was finished he intended to move into it for his home, as he had previously sold the house at 2829 Zarthon avenue.

Relator contends that Rex entered into these ventures with a view to making a profit and not to provide himself with a home. He testified that Rex had told him that he expected to make about $2,000 on the old house after it was remodeled, but the latter denied this. Relator further claimed that Rex talked to him about going into the business of building houses. The latter denied this and contended

that his only purpose in buying the old house and having it remodeled was to secure a home that he could afford. His father, Frederick H. Poppe, financed this deal and kept the title in his own name as security. Frederick H. Poppe had no other connection with the hiring of relator. He never conversed with relator on the subject of work to be done, never paid him, never furnished him with any materials, nor otherwise indicated to relator that he, Frederick H. Poppe, was in any way employing relator.

■ Considering the question as to whether the record discloses any employment of relator by Frederick H. Poppe, we conclude that the evidence supports the referee's dismissal of the proceeding as to him. M. S. A. 176.01, subd. 5, provides that "The term 'employer' means every person who employs another to perform a service for hire and to whom the 'employer' directly pays wages, * * *." Under § 176.01, subd. 8(2), "employe" is defined to include "Every person in service of another under any contract of hire, expressed or implied, oral or written, * * *." This court has held that a contract of hire, either express or implied, is essential to the relationship upon which coverage under the act depends. Schneider v. Salvation Army, 217 Minn. 448, 14 N. W. (2d) 467.

In the case before us there is no attempt on the part of relator to show an express contract with Frederick H. Poppe. The only evidence even remotely suggesting an implied contract is found in the circumstance that Frederick financed his son's venture. We hold that under the facts in this case such financing alone could not have created a contract of hire between relator and Frederick H. Poppe. The dismissal as to him must therefore be affirmed.

■ As to respondent Rex Poppe, the questions to be determined are whether the employment, at the time of the accident, was both casual and not in the usual course of the trade, business, profession, or occupation of the employer.

M. S. A. 176.05 provides in part for exclusions from the workmen's compensation act of "persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession, or occupation of his employer." It is well settled that

in order to exclude such an employe it must be shown that the employment was *both* casual and not in the usual course of the trade, business, profession, or occupation of the employer. One ground alone is not sufficient. Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632; Chisholm v. Davis, 207 Minn. 614, 292 N. W. 268. That the terms "casual" and "in the usual course of the business" are distinct and separate is well brought out by this court in the Chisholm case, *supra.*

In the instant case, the commission sustained the referee's finding that on the day of his injury relator's employment was casual and not in the usual course of the trade, business, profession, or occupation of his then employer, Rex Poppe. We are here considering whether the facts in the record will sustain this finding. The findings of fact of the commission are entitled to very great weight and will not be disturbed unless they are manifestly contrary to the evidence. 6 Dunnell, Dig. & Supp. § 10426; Colosimo v. Giacomo, *supra.*

In Billmayer v. Sanford, 177 Minn. 465, 467, 225 N. W. 426, 427, this court defined casual employment as follows:

"* * * What is a casual employment? Experience teaches that no exact definition of the term is advisable. Our first thought of the term is that it indicates something which comes without regularity and is occasional and incidental. Its antonyms are 'regular,' 'certain,' 'periodic,' and 'systematic.' A thing is casual when it comes without regularity and is of comparatively minor importance. It is usually temporary and of short duration. Where the employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employe that it shall not be continuous, it is casual."

The dictionaries define the word "casual" as "Coming without regularity; occasional; incidental; occurring at irregular intervals." See, Webster's New International Dictionary (2 ed.) 1947, and Funk & Wagnalls New Standard Dictionary, 1945. In attempting to

apply the word "casual," the practical facts in each case must be considered. Here, it is clear that the employment was not to be permanent or continuous under the contract of hire. At most, it was to last only until the completion of the remodeling job on the so-called "old" house. Relator first did some paneling work on Rex Poppe's first home, but he was not the original contractor. Some time elapsed between then and the time he worked on the remodeling job. He was not continuously confined to the remodeling job, but stopped at intervals to do other work. The commission found that this was casual, and there was evidence to sustain that finding.

A business has usually been considered as a habitual or regular occupation in which a person engages for a substantial amount of time, with a view to making a livelihood or gain. Webster's New International Dictionary (2 ed.) 1947, defines business as "Any particular occupation or employment habitually engaged in, esp. for livelihood or gain." It must be recognized that a person may engage in more than one business at any given time. Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426, *supra*.

We have here a fact question on the conflicting claims contained in the evidence before us as to whether Rex Poppe intended to make a business of buying, remodeling, and then reselling homes at a profit, or whether he was merely interested in providing himself and his family with a place in which he could afford to live. Rex claims that the latter was his purpose, and there is nothing in the record to show that he had been in the business of buying and selling houses for himself as his regular business. True, the record shows that he built a house at 2829 Zarthon avenue, in which he lived and which he later sold at a profit. He claims that he sold it because it cost more than he expected and that the payments required were greater than he could afford. There is nothing impossible to believe about that testimony, especially in these times of high building costs. He further claims that he bought the old house on Alabama avenue to have it remodeled for his home so that he could have a less expensive place in which to live. This testimony also appears reasonable. If he was remodeling the place for his home, it clearly

would not be in the course of his regular business, for it is well settled by decisions of this court that the establishment and maintenance of a home by an employer is not a trade or business.

In Eichholz v. Shaft, 166 Minn. 339, 343, 208 N. W. 18, 19, this court said:

"The upkeep and care of a home for one's self and family are not in the category of a trade, business, profession or occupation, as generally understood. A home is not established and maintained in the expectation of pecuniary gain. Such a venture is solely an expense. It therefore did not come within the original purpose of the act to include the home as an industry to be burdened with the accidental injuries to servants therein engaged. * * * Maintaining a home, whether in an apartment or in spacious grounds * * * does not come within the definition of the Workmen's Compensation Act, however liberally construed, as being a part of the trade, business, profession or occupation of the employer. Nor is it an industry."

In Sink v. Pharaoh, 170 Minn. 137, 212 N. W. 192, 50 A. L. R. 1173, it was held that a retired farmer, living with his wife in Monticello, who owned no other real property except a small house in Minneapolis which he rented out, was not liable under the workmen's compensation act for injuries to a carpenter whom the owner hired to reshingle the rented house. The owner had no regular trade or occupation, but had done occasional work in the meat market in his home town after retiring from his farming operations. This court there said (170 Minn. 139, 212 N. W. 192):

"* * * We can well conceive that a person may embark in the owning and letting of houses so that it results in a business or occupation. But had this small dwelling been owned by a merchant, doctor, or lawyer and had Sink been employed to reshingle the same, could it have been said that the employment was in the usual course of the business or profession of the owner? * * * if the exception of the statute is to cover any situation at all or be given some force or meaning it should exclude the employer here."

There was evidence in the instant case to sustain the finding that relator's employment was not in the usual course of the trade, business, profession, or occupation of respondent Rex Poppe on the date of the injury. The decision of the industrial commission is affirmed.

Affirmed.

[1]Reported in 34 N. W. (2d) 342.