ELLA SOPHIA KOLBECK v. REUBEN MYHRA.

96 N. W. (2d) 633.

May 22, 1959—No. 37,590.

*Hansen, Hazen & Lynch* and *Phillip Klein,* for appellant.
*Lipschultz, Altman, Geraghty & Mulally, James H. Geraghty,* and *Roger Lenzmeier,* for respondent.

DELL, CHIEF JUSTICE.

Defendant lives in Wahpeton, North Dakota, and operates a 1,600-acre farm near there. He is also the owner of seven buildings in St.

Paul, Minnesota, valued at $30,000 and containing 13 rental units from which the annual income was, at the time of the hearing, approximately $7,800. Either defendant, his wife, or a daughter, who lived in Minneapolis, took care of leasing the property and its general supervision. In 1953 or 1954 defendant or his wife determined that one of the buildings, a duplex, needed painting. Decedent, plaintiff's husband, although employed full time at a local brewery, solicited the job. He was hired and commenced work in May 1954. He devoted his whole vacation, Saturdays, Sundays, and every evening after work for nearly 3 months to the project which included a good deal of general repair work in addition to the interior and exterior painting. Both his wife and a son assisted him. By August 16, the date of the accident, the work was nearly completed. On that date, decedent, while working on the chimney, fell from the roof to the ground, a distance of 15 to 20 feet. He was taken to a hospital where he died 3 days later.

Plaintiff seeks to recover benefits under the Workmen's Compensation Act for herself and two minor children. Her claim is that decedent was defendant's employee within the meaning of the act and that she is entitled to compensation. Defendant denies this claim and as a bar to recovery sets up M. S. A. 176.041, which provides in part:

"This chapter does not apply to * * * persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession, or occupation of his employer."

Defendant's position is that decedent was a casual employee and was not engaged in the usual course of his (defendant's) trade or business.

■  The action was commenced in district court, rather than before the Industrial Commisson, under § 176.295, which provides for such procedure when the employer is a nonresident of the state and a claimant is unable to serve him with the petition for compensation which has been filed with the commission. Pursuant to § 176.301, the case was referred to the Industrial Commission for hearing "in the manner in which it hears cases originally brought before it." A referee found that decedent's employment was not casual; that it was in the usual course of defendant's business; and that plaintiff was entitled to compensation. The commission on appeal affirmed. The district court, being given the power by statute to "approve or disapprove the decision of the commission in the same

manner as it approves or disapproves the report of a referee," disapproved the commission's decision, granted defendant's motion for amended findings of fact and conclusions of law, and entered judgment in his favor. This appeal followed.

The statute provides that the district court shall treat the decision of the Industrial Commission in the same manner as it would treat a referee's report. The court was, therefore, required to accept the commission's findings of fact unless they were clearly erroneous.[1] The findings have the effect of a special verdict.[2] This is substantially the same rule we apply to the findings of the Industrial Commission; namely, that they must not be disturbed unless they are manifestly contrary to the evidence.[3] That such a rule is both sound and desirable should be obvious if for no other reason than to prevent different results in the same case merely because the forum in which it is brought happens to vary. In the instant case, therefore, we need only determine whether there was sufficient evidence in the record to support the finding that defendant was engaged in the business of owning and renting property. It does not matter that on these facts either the district court or this court might arrive at a different conclusion as long as there was evidence before the commission from which it could make the determination which it did.

■ To deprive an employee or his survivors of their benefits under the statute it must be shown that the employment was *both* casual *and* not in the usual course of the employer's business.[4] To establish one without the other is not enough. Put another way, if it can be demonstrated that the employment was not casual, even though not in the usual course of business,[5] or if it is in the usual course of business, even though it is casual,[6] then compensation is properly allowed. In the

[1] Rules of Civil Procedure, Rule 53.05(2).

[2] State ex rel. Stephenson v. Ryan, 235 Minn. 161, 50 N. W. (2d) 259.

[3] Koktavy v. City of New Prague, 246 Minn. 550, 75 N. W. (2d) 774.

[4] Altermatt v. Altermatt, 239 Minn. 241, 58 N. W. (2d) 256; Amundsen v. Poppe, 227 Minn. 124, 34 N. W. (2d) 337.

[5] Chisholm v. Davis, 207 Minn. 614, 292 N. W. 268.

[6] Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Workman v. Endriss, 164 Minn. 199, 204 N. W. 641.

instant case we are satisfied that decedent's employment occurred in the usual course of defendant's business. Having sustained her position on that ground, plaintiff is entitled to recover, and it is unnecessary for us to consider whether or not decedent's employment was, in fact, casual.

Just what constitutes the "usual course of the [employer's] trade, business, profession, or occupation" will vary from case to case. Since workmen's compensation statutes are highly remedial and humanitarian in purpose, they must be given a broad, liberal construction in the interests of the workmen.[7] It is well settled in this state that "a person may embark in the owning and letting of houses so that it results in a business or occupation."[8] When his conduct reaches such proportions, the property ceases to be held merely "as an investment or means of income"[9] and becomes "a business enterprise or occupation within the meaning of the act."[10] Of course a person may engage in more than one business. If he engages in several he will have to determine for himself how much time to apportion to each one for it is obvious that some enterprises will require more time and effort than others. It may be that the enterprises to which more time is devoted will be more profitable but that need not always be so. The active management of property may require less time in order to yield a satisfactory income than will the operation of a farm, but it may be a business nonetheless. Each case must rest upon its own facts.

We have already set forth some of the property which defendant owned and operated in St. Paul. In addition, at the time of the accident or prior thereto, he also owned another house and a fourplex in St. Paul which were used for rental purposes and some lots and farm land in Minnesota and North Dakota. In 1952 he deducted $300 in his Federal income tax return which he claimed was the cost of transportation from Wahpeton to St. Paul incident to caring for the property. In 1954

---

[7]Koktavy v. City of New Prague, 246 Minn. 550, 75 N. W. (2d) 774; Sobczyk v. City of Duluth, 245 Minn. 569, 73 N. W. (2d) 795.

[8]Sink v. Pharaoh, 170 Minn. 137, 139, 212 N. W. 192, 50 A. L. R. 1173.

[9]Billmayer v. Sanford, 177 Minn. 465, 467, 225 N. W. 426, 427.

[10]Jackson v. Cathcart & Maxfield, Inc. 201 Minn. 526, 536, 277 N. W. 22, 27.

he deducted half of the cost of an apartment in Minneapolis where his daughter lived on the grounds that it was used for business purposes. Yet his wife had no business in the Twin Cities other than that involving this property, and besides one or two visits there each year to inspect equipment for the farm, neither did defendant. The frequency of their trips varied directly with duties involved in operating the property, leasing, rent collection, eviction, and repairs. It is true that defendant did not spend as much time in the management of this property as he did in operating his farm and that the income therefrom was not the major part of his yearly earnings. On the other hand, we cannot overlook the fact that defendant left most of the management of this property to his wife, which indicates that it consumed a good deal of time—more than he could conveniently devote to it himself. On the record before us we are satisfied that defendant did, in fact, operate this property as a business and also that he himself treated and considered it as a business enterprise.

The instant case is distinguishable from those cases in which we held that employers were not engaged in the business of owning and leasing property. It is not necessary to set them forth in detail since they are collected and adequately discussed in Jackson v. Cathcart & Maxfield, Inc. 201 Minn. 526, 277 N. W. 22, and Fisher v. Manzke, 208 Minn. 410, 294 N. W. 477. Defendant relies heavily on the former. In that case two buildings, containing 15 apartments and operated as a single unit, were owned by two sisters who were (201 Minn. 528, 277 N. W. 23) "housewives living with and being supported by their husbands." Neither took any part at all in the operation of the buildings nor, with a minor exception, had either ever bought, sold, or owned any real estate. When claimant, who had been hired and paid by the building janitor and not by defendant to help take off storm windows and put up screens, was injured, he applied for workmen's compensation. We held that he was not entitled to it because the record did not sustain the finding that claimant was an employee at all. We then said (201 Minn. 535, 277 N. W. 27):

"Ordinarily we would say nothing more concerning this case, as what is now determined ends it. In view, however, of the extensive arguments of counsel and the thoroughness with which they have gone into the

law respecting the second point [whether this constituted a business], we have, reluctantly to be sure, concluded also to discuss that feature."

After carefully reaffirming the principle that the particular facts of each case must determine its outcome, we held that these housewives owned the property as an investment and not for business purposes.

The differences between the Jackson case and the instant one are readily apparent. In the former the two buildings were the owners' only connection with the real estate business. Here, however, defendant, in addition to caring for the St. Paul property, had also purchased and sold real estate from time to time over a period of years. Moreover, defendant and his wife in this case actively managed the property. They leased the premises, collected the rent, took care of evictions, and supervised the repairs. They determined that the work here involved had to be done. They hired the decedent, and they themselves kept constantly apprised of his progress. In the Jackson case defendant did not even know that claimant had been hired.

In Fisher v. Manzke, 208 Minn. 410, 294 N. W. 477, the latest in the series of cases on this point, we held that a husband and wife, who owned and operated two buildings each containing 24 apartments which, when fully rented, yielded an income of $8,400 a year, could properly be found to be in the business of owning and operating property. From what we said in that case and upon the record here, we think that the commission could properly conclude that this defendant was engaged in a like business. Plaintiff is, therefore, entitled to compensation with an allowance in this court of $350 attorney fees.

Reversed.