# FREDA ROSE BERARD AND OTHERS v. DONALD J. LaCOE.

## 176 N. W. (2d) 74.

### March 20, 1970—No. 41960.

*Shanedling, Phillips, Gross & Aaron* and *Felix M. Phillips,* for relator.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *John W. Romine* and *Lane C. Fridell,* Special Assistant Attorneys General, for respondent State Treasurer.

*O. P. Lund,* for respondents Berard.

Heard before Knutson, C. J., and Rogosheske, Sheran, Frank T. Gallagher, and Theodore B. Knudson, JJ.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission denying compensation to relator.

Relator, Donald J. LaCoe, was employed full time as a machinist for Toro Manufacturing Corporation. In his spare

time he worked as a house painter. In August 1967 he was hired by respondent Freda Rose Berard to paint the trim on a house she and her husband owned at 3235 34th Avenue South, Minneapolis. The agreed compensation was $60, and LaCoe was to finish the job by August 19 because siding was to be put on that day.

On August 17, 1967, LaCoe was painting high up under the overhang when a leg of the scaffold gave way. LaCoe was thrown to the ground. He was taken to General Hospital where it was determined he suffered a broken wrist, lacerations on his face, and a gash on his leg requiring stitches.

He applied for workmen's compensation. Since the Berards were uninsured, the state treasurer was made a party pursuant to Minn. St. 176.183.

At a hearing before a referee for the Workmen's Compensation Commission LaCoe proved that he was hired by Mrs. Berard for $3 per hour; that she provided the paint and he provided the equipment; that he was injured on the job; that his time lost was 5 3/5 weeks; and that he incurred medical bills totaling $142.52. A doctor testified that LaCoe suffered 15-percent permanent disability in his neck and left shoulder.

At the hearing it developed that the Berards were both retired. Edward Berard received $221 per month railroad pension and Freda Berard received pensions and social security totaling $207.60 per month. They also received interest income from a $10,000 savings account. The rest of their income was derived from rental property they owned either jointly or severally. They owned a total of ten rental units, one of which they lived in themselves. They owned two fourplexes and two single-family dwellings, one of which was the property LaCoe was working on when he was injured. Respondents managed the properties themselves, taking care of leasing, maintenance, repairs, and rent collections. The property at 34th Avenue South was inherited by Freda Berard from her sister, but she placed it in joint tenancy with her husband. The Berards had been married

for only 2 years, but prior to that time they had entered into a business venture and together purchased one of the fourplexes. They had neither bought nor sold any property for over 10 years. In 1967, the gross rental from the properties was $8,500 and in 1966 they took a $4,000 depreciation deduction. The evidence showed that their profits for 1966 and 1967 were low because of the great amount of repair work they had had done.

From this the referee found that LaCoe was an employee of the Berards at the time of the accident; that his employment was casual and not in the usual course of a trade, business, or occupation; and that he did not suffer any permanent partial disability. Because the employment was both casual and not in the usual course of a trade, business, or occupation, compensation was denied. The commission accepted all of the referee's findings except that relating to disability, saying that there was not sufficient evidence to determine whether or not LaCoe suffered any permanent partial disability.

Relator contends that the finding that the Berards were not engaged in a trade, business, or occupation was erroneous.

Minn. St. 176.041, subd. 1, states in part:

"This chapter does not apply to any * * * persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession, or occupation of his employer."

To be included under this section, the employment must be *both* casual and not in the usual course of the employer's business. Kolbeck v. Myhra, 255 Minn. 341, 96 N. W. (2d) 633; Altermatt v. Altermatt, 239 Minn. 241, 58 N. W. (2d) 256; Amundsen v. Poppe, 227 Minn. 124, 34 N. W. (2d) 337. Relator does not contend his employment was not casual. Therefore, if the employment was not in the usual course of his employers' business, relator is not entitled to compensation.

The workmen's compensation statute is remedial and humanitarian in its purpose and is to be given a broad, liberal construc-

tion in favor of the interests of the workman. Kolbeck v. Myhra, *supra.* What constitutes a business is to be determined in light of the facts and circumstances surrounding each case. Kolbeck v. Myhra, *supra;* Jackson v. Cathcart & Maxfield, Inc. 201 Minn. 526, 277 N. W. 22. With these considerations in mind, we hold that the employment was in the usual course of the employers' business.

Relator cites as controlling cases Kolbeck v. Myhra, *supra,* and Fisher v. Manzke, 208 Minn. 410, 294 N. W. 477. Respondents cite as controlling, Jackson v. Cathcart & Maxfield, Inc., *supra,* and Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426.

In Billmayer, relator was a married woman who was a housewife. She owned four buildings which accommodated eight tenants. She had owned the property for 20 years and had neither purchased nor sold property during that time. Respondent was employed to change the storm windows when he was injured. The court reversed a finding that the employment was in the usual course of business.

In Jackson, the two relators had acquired a seven-eighths interest in two apartment buildings. They also were housewives and they left the actual management of the buildings to a real estate firm. The income to each was less than $50 per month. Respondent was a parttime employee of the janitor in the buildings. He was injured while taking off storm windows. This court found that there was no employee-employer relation with relators and further found that, if there had been such a relation, the employment would not have been in the usual course of business.

In Fisher, relators owned two apartment buildings totaling 48 rental units. The income from the properties was $700 per month. They managed the property themselves. They owned a farm which they rented, but the bulk of their income was derived from the renting of the apartment buildings. Respondent was injured while putting up storm windows. The court affirmed a

finding that the employment was in the usual course of the owner's business.

In Kolbeck, defendant owned and operated a farm in North Dakota but also owned seven buildings in St. Paul with 13 rental units which generated $7,800 annual income. Defendant and his wife actively managed the properties. Defendant or his wife determined the buildings needed painting and hired plaintiff's husband, who was killed when he fell off the roof. The court affirmed a finding that the employment was in the usual course of the owner's business.

The instant case is very similar to Kolbeck and Fisher. In all three cases, the owners actively managed their property—handling the leasing, collecting the rent, and supervising repair and maintenance—and derived a significant portion of their income from rentals. In Jackson, the management was left in the hands of a real estate firm and the owners derived only $50 per month from rentals. In Kolbeck and this case, the work being done was improvement of the property to enhance its rental value. In Jackson and Billmayer, the workman was only changing storm windows, which every home owner must have done twice yearly; hence the employment was consistent with the fact that the owners were passive investors.

The referee and the commission were of the opinion that the fact that the Berards had not purchased or sold any property for 10 years indicates that they were not engaged in a business. We feel that this view is too restricted. (Apparently, in Fisher the property owners had purchased or sold property only three times in 16 years.) While the purchase and sale of rental property would indicate that a person is engaged in a real estate business, the absence of such activity does not mean that there is no business. The Berards owned four buildings in good repair and may not have felt any need to acquire additional property. Before their marriage, respondents purchased a building together. This indicates that their real estate dealings were in the nature of a business that they operated together. Since their re-

tirement, their time has been devoted exclusively to the management of these properties. The active management of rental property already owned can be a business.

We hold that the finding of the Workmen's Compensation Commission that the Berards were not engaged in a business is not supported by the evidence and must be reversed. The referee found no permanent partial disability, but the commission refused to accept this finding, holding that the evidence was insufficient to resolve the issue without additional medical testimony. Therefore, we must remand for further proceedings.

Reversed and remanded.