Blair SORENSON, Plaintiff,

v.

**The INDUSTRIAL COMMISSION OF UTAH and Jeffrey Lynn Nelson, Defendants.**

No. 15916.

Supreme Court of Utah.

July 11, 1979.

Prince, Yeates & Geldzahler, Ronald F. Sysak, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Salt Lake City, for Ind. Comm.

Russell J. Hadley, Salt Lake City, for Nelson.

MAUGHAN, Justice:

Before us is an order of the Industrial Commission awarding compensation to respondent, Jeffrey Lynn Nelson, hereafter "Nelson"; Blair Sorenson, hereafter "Sorenson," appeals. We affirm. Costs are awarded to Nelson. All statutory references are to U.C.A.1953, unless otherwise indicated.

Sorenson and Nelson became acquainted while they were taking a class together at the University of Utah. Upon discovering Nelson could do carpenter work, Sorenson offered him $4.00 an hour to repair, remodel, and paint apartments. Between February and August of 1975, Nelson worked for and with Sorenson at several rental units. He was told he could expect to work about 40 hours per month for an indefinite period of time, and they could afford to pay him about $160 per month.

From February 1975 to August 29, 1975 (the day of the accident), Nelson worked at various times and places on rental units belonging to Sorenson. From the end of July 1975, until the day of the accident, Sorenson gave Nelson a series of specific instructions concerning the painting of the north and west sides of a four-plex. Using a ladder, Nelson, while engaged in brushing the cinderblock wall, fell and suffered the injuries of which he complains.

Sorenson argues that his employee, Nelson, was specifically within the exclusion to the Workman's Compensation Act set forth in § 35–1–43(2), as amended 1975.

. . . but not including any person whose employment is but casual and not in the usual course of trade, business or occupation of his employer.

 An exemption such as this applies only when the employment is both casual *and* outside the usual business of the employer.[1]

In *Sommerville v. Industrial Commission,*[2] this Court incorporated the two aspects of this exemption into a singular test:

The test, then, as to whether an employee is a casual employee is whether the services rendered by him are necessary to, or in furtherance of his employer's usual trade, business, or occupation.

The basic issue then is whether Sorenson was in the rental business as the term "business" is used in the compensation act, since it must be assumed the type of work being performed by Nelson would be in the course of the rental business.

. . . Maintenance, repair, painting, cleaning, and the like are "in the course" of business because the business could not be carried on without them, and because they are an expectable, routine, and inherent part of carrying on any enterprise. . . .[3]

In *Sommerville,* this Court stated:[4]

This is not to say that one may not be engaged in two or more businesses, or a profession or trade and a business at the same time, and be responsible under the Workmen's Compensation Act in both or all fields of activity. Nor do we hold that the owning and operation of real estate for rental purposes may not, in some instances, be a business within the meaning of the Workmen's Compensation Act.

---

1. 1–B Larson, *Workmen's Compensation Law,* § 51.11, p. 9–74; *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission,* 18 Ariz.App. 403, 502 P.2d 1080, 1084 (1972); *Fisher v. Manzke,* 208 Minn. 410, 294 N.W. 477 (1940); *Kalmon v. Industrial Commission,* Colo.App., 583 P.2d 946 (1978).

2. 113 Utah 504, 509, 196 P.2d 718, 721 (1948).

3. 1–B Larson, Workmen's Compensation Law, § 51.23, p. 9–86.

4. At p. 510 of 113 Utah, at p. 721 of 196 P.2d.

Our holding is limited to the facts of this case, i. e., that where a person owns one piece of real estate which he "rents out" to tenants, but does not either personally or by agent devote a substantial amount of time to the operation or management of such property, the owning and renting of such property does not constitute a business within the meaning of the Workmen's Compensation Act.

The point at which the ownership of leased or rented property becomes a business within the Workmen's Compensation Law is usually a question of fact, and here the facts as found by the Commission leave no room to debate that question.[5] Those facts are set out, infra.

The second problem in delimiting the nonbusiness exemption is that of the employer who has work done on a property from which he derives some income. A set of Minnesota cases supplies the best illustration of how this problem is approached, and how difficult it is to draw the line. In the first, it was held that the renting out of one house by a retired couple was not business. A little later, in a much more debatable case, the same decision was reached as to a married woman who owned four buildings so arranged as to accommodate eight or nine tenants. Inevitably came the case that went too far. A retired farmer had two apartment buildings capable of bringing in an income of $700 a month, on which he had for many years relied for his living. Renting property was held to be his usual business. . . .[6]

In *Berard v. LaCoe*,[7] the Minnesota court found the owners of ten rental units were engaged in a business. The court observed that what constituted a business was to be determined in light of the facts and circumstances in each case. The court found the following to be significant factors in concluding the owners were engaged in a busi-

ness: The owners actively managed their property—handling the leasing, collecting the rent, and supervising repair and maintenance; they derived a significant portion of their income from rentals; and the work being done (painting) was an improvement to the property to enhance its rental value.

The court contrasted the circumstances in *Berard* with those in *Billmayer v. Sanford*[8] and *Jackson v. Cathcart & Maxfield, Inc.*[9] In *Billmayer*, the owner was a married woman who owned four buildings which accommodated eight tenants. She had owned the property for 20 years, and had neither purchased nor sold property in the interim. The injured party was employed to change the storm windows. The court ruled the employment was not in the usual course of business. In *Jackson*, the two owners had acquired a seven-eighths interest in two apartment buildings. The owners were housewives who left the actual management of the buildings to a real estate firm. The income to each was less than $50 per month. The part-time employee was a janitor in the buildings who was injured while taking off storm windows. The court found the employment was not in the usual course of business. The court in *Berard* further observed that in *Jackson* and *Billmayer*, the workmen were only changing storm windows, which every home owner must do twice a year; thus the employment was consistent with the fact that the owners were passive investors.

In the instant case, Sorenson owned ten parcels of real property upon which were situated nineteen rental units—two four-plexes, three duplexes, and five single units. He actively managed the units, handling the renting and collecting the rentals, performing many of the repairs himself or engaging others to do so. At the time workman Nelson was injured, he was preparing one of the four-plexes for painting in order to enhance the property.

---

5. See Anno.: 50 A.L.R. 1176.

6. 1-B Larson, Workmen's Compensation Law, § 50.24, pp. 9-53 to 9-54.

7. 286 Minn. 375, 176 N.W.2d 74 (1970).

8. 177 Minn. 465, 225 N.W. 426 (1929).

9. 201 Minn. 526, 277 N.W. 22 (1938).

Sorenson's income tax for 1975 was introduced into evidence; this record reveals the magnitude of his business. He collected $28,794 in rents. The depreciation on the ten properties amounted to $10,684. The expenses were set at $22,383, leaving a net loss for *tax purposes* of $4,273. Included in the expenses was $10,458 for interest. Sorenson emphasized that he only spent 69¾ hours for personal labor on the property during 1975. However, he claimed an expense of $2,250 for mileage on his income tax in connection with the management of these ten properties. From these circumstances, there is a reasonable basis in the evidence to support the finding of the Commission. The finding of the Industrial Commission is supported by the record. "Said industrial injuries sustained by the applicant occurred during the course of his employment as a repairman on the rental property owned by the defendant."

Sorenson claims a denial of due process because at the administrative trial stage, the decision was rendered by an administrative trial judge other than the one who had heard the case. Such was occasioned because of the resignation of Judge Kenneth Rigtrup to accept another position. However, the record is clear in showing his successor, Judge Foley, to have carefully examined the file, the transcript, and the medical panel report. In addition, because of the motion for review, the Industrial Commission made a further examination of all of the evidence. The record also shows that pursuant to § 35–1–82.53 and § 35–1–82.54, the members of the Commission carefully examined the transcript, the medical panel report and the file which had been prepared by Judge Rigtrup. After such examination, the Commission adopted the findings of Judge Foley in toto. Such analysis by Judge Foley and the Commission, we hold, satisfies the requirements of procedural due process in administrative law.

Sorenson cites *Crow against the Industrial Commission*,[10] to support his claim; he was denied procedural due process. That case is completely distinguishable from the one at hand.

Two other claims: (1) Nelson was an independent contractor; and (2) Nelson failed to establish the nature and extent of his injuries before the administrative law judge, making the final decision, are without merit. The evidence militates against Sorenson's independent contractor claim; and as to the injuries claimed, it is raised for the first time on appeal, Sorenson having failed to register to objection to the medical panel report below, pursuant to § 35–1–77.

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

10. 104 Utah 333, 140 P.2d 321 (1943).