# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2819

_____

| | | |
|---|---|---|
| Jerald Meyer, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Duluth Building Trades Welfare Fund, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 11, 2002

Filed: August 5, 2002

_____

Before HANSEN, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant Jerald Meyer, a participant in the Duluth Building Trades Health and Welfare Fund (Fund), was denied benefits by the Fund for injuries he received at his spouse's restaurant. He appeals from the district court's grant of summary judgment in favor of the Fund. We reverse.

## I.    BACKGROUND

On September 23, 1999, while measuring the side of his spouse's restaurant, Meyer fell from a scaffold and incurred a serious brain injury, three broken ribs, a broken wrist, and injury to his neck vertebrae.  His accident left him totally disabled and unable to return to his trade as a plumber and pipefitter.

The Fund provides medical and weekly income benefits to employee-participants in accordance with its Trust Agreement and plan documents, and is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1132.  At the time of the accident, Meyer was a member of a participating local union that was affiliated with the Fund.  His employment as a plumber and pipefitter–which had nothing to do with the assistance he was providing his spouse–was covered by a collective bargaining agreement between a contributing employer and a participating local union.  Meyer had no ownership interest in, nor any rights or obligations related to his spouse's restaurant.

After sustaining injuries from the fall, Meyer submitted a claim to the Fund requesting that, pursuant to its provisions, the Fund cover his medical bills and afford him a weekly income benefit.  Almost two months later, the Fund denied Meyer's claim, informing him that, "[t]he basis for this denial [could] be found in [his] Summary Plan Description on page 41, #2(c).  Based on the information received, it appears that this should have been covered under the restaurant's workmen's compensation."  The Fund's Summary Plan Description states:

EXCLUSIONS AND LIMITATIONS

Payment will not be made under any health benefit or Weekly Income Benefit of the Plan for the following:

2.    Charges incurred in connection with:

. . . .

     c.    Any Accidental Injury or Sickness which would be covered under Workers' Compensation, or similar law, regardless of whether or not such insurance was in force and effect at the time of injury.

Meyer responded to the Trustees of the Fund:

I do not own any part of, or have any claim in the restaurant whatsoever. So I was not working for wages, profit or gain of any kind. I was not working at all. I was getting some measurements so that my wife could get an estimate from the lumber yard on redoing the back of the building.

Meyer also sent the Trustees a copy of a letter that his spouse received from a representative of her workers' compensation insurer. The letter explained that Meyer was not covered by his spouse's workers' compensation policy because, under state law, the spouse of a sole proprietor is excluded from coverage under the Minnesota Workers' Compensation Act (or "the Act"), and that, although coverage could be elected for family members, Meyer's spouse had not done so.

The Fund's administrator again denied Meyer's request for benefits. In her letter informing Meyer of the Fund's reconsideration of his claim, the administrator stated that "[e]ven though this [workers' compensation claim] was denied by the restaurant's workers' comp carrier, it appears that the main reason for denial was that you, personally, are not covered by the work comp insurance. It does appear, however, that you could have been covered if you had so elected." [Sic].

-3-

After Meyer exhausted all administrative remedies available to him, he brought this action in the district court[1] pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). The court granted the Fund's motion for summary judgment and denied Meyer's similar motion.

## II.     DISCUSSION

### A.     Standard of Review

We review an ERISA plan's denial of benefits based on plan interpretation de novo unless the plan gives the administrator or fiduciary discretionary authority to determine participants' eligibility for benefits or to construe the plan's terms. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Milone v. Exclusive Healthcare, Inc., 244 F.3d 615, 618 (8th Cir. 2001); Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir. 1989). If the plan bestows that authority, we review the plan administrator's construction of the plan for abuse of discretion. Milone, 244 F.3d at 618. In contrast, where a plan's decision to deny benefits is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed de novo. E.g., Penn v. Howe-Baker Engr's, Inc., 898 F.2d 1096, 1100 & n.3 (5th Cir. 1990); Herrmann v. E.W. Wylie Corp., 766 F. Supp. 800, 802 (D.N.D. 1991).

Because, as the Fund agreed at oral argument, resolution of this matter rests on interpretation of the Minnesota Workers' Compensation Act, we review the matter de

---

[1]Pursuant to 28 U.S.C. § 636(c), the parties consented to final district court disposition by the assigned magistrate judge.

novo. Nonetheless, given the Fund's erroneous application of the Act, the outcome in this matter would be the same under the abuse of discretion standard.[2]

**B.     The Act**

The Minnesota Workers' Compensation Act defines "employee" as "any person who performs services for another for hire." 13 Minn. Stat. Ann. § 176.011, Subd. 9. Section 176.041 of the Act includes the following provisions:

Subdivision 1. Employments excluded. This chapter does not apply to any of the following:
. . . .
(d) a sole proprietor, or the spouse, parent, and child, regardless of age, of a sole proprietor;
. . . .
(k) a person whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession, or occupation of the employer;
. . . .
[Subdivision] 1a. Election of coverage. The persons, partnerships, limited liability companies, and corporations described in this subdivision may elect to provide the insurance coverage required by this chapter.

---

[2]Although we are not required to decide the issue because of the Fund's concession on interpretation of the Act, we would, if necessary, hold that the Fund's interpretation of the plan constitutes an "abuse of discretion," thus providing an alternative basis for reversal. For the reasons outlined in Part B of this opinion, Meyer's injury "would [not] be covered under Workers' Compensation, or similar law," at least under the plan language advanced by the Fund in denying the claim. The words mentioned, and similar formulations contained in other benefit plans, are designed to protect plan assets through initial, mandatory application of collateral source benefits, where available.

. . . .

(f) . . . . The persons, partnerships, limited liability companies, and corporations described in this subdivision may . . . elect coverage for an employee who is a spouse, parent, or child, regardless of age, of an owner, partner, manager, or executive officer, who is eligible for coverage under this subdivision. Coverage may be elected for a spouse, parent, or child whether or not coverage is elected for the related owner, partner, manager, or executive director and whether or not the person, partnership, limited liability company, or corporation employs any other person to perform a service for hire. Any person for whom coverage is elected pursuant to this subdivision shall be included within the meaning of the term employee for the purposes of this chapter.

The Fund based its decision to deny Meyer's claim for benefits on its interpretation of subdivision 1a(f) of the Act. In affirming the Fund's decision, the district court focused on the last sentence of subdivision 1a(f), which states that "[a]ny person for whom coverage is elected pursuant to this subdivision shall be included within the meaning of the term employee for the purposes of this chapter." The court concluded that "the extension of 'employee' status, within the Minnesota Workers' Compensation Act, to spouses of owners who have elected to obtain Workers['] Compensation insurance, trumps any requirement that the 'employee' be otherwise eligible for coverage," and consequently, "the owner's election of coverage for that spouse envelopes him or her within the meaning of an 'employee,' without reference to the type of work in which the worker-spouse is engaged at the time of his or her injury." Through its construction of the Act, the court avoided the definitional requirement that an employee be a person "who performs services for another for hire," § 176.011, Subd. 9, and its exclusion for "casual" employees, § 176.041, Subd. 1(k).

The district court's analysis turns the Act on its head. To properly analyze the Act's exclusions and elections, one must not read those provisions in isolation but

must first assess the Act's definitions and its structure generally. Only then can the language of the exclusions and elections be placed in context.

First, as indicated, section 176.011, subdivision 9, defines "employee" as "any person who performs services for another for hire." Next, section 176.021, subdivision 1, indicates that "[e]xcept as excluded by this chapter all employers and employees are subject to the provisions of this chapter." Section 176.041, subdivision 1, excludes specific employments from workers' compensation coverage, including "(d) a sole proprietor, or the spouse, parent, and child . . . of a sole proprietor," and "(k) a person whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession, or occupation of the employer." But then, subdivision 1a of section 176.041 allows various entities to "elect to provide the insurance coverage required by this chapter." Business owners may "elect coverage for an *employee* who is a spouse, parent, or child . . . of [the] owner." § 176.041, Subd. 1a(f) (emphasis added). However, there is no election vehicle for employers of the "casual" employee. Compare § 176.041, Subd. 1(k), with § 176.041 Subd. 1a. Nor is there an election option for anyone who is not an "employee," as defined, including a non-employee-spouse. Finally, subdivision 1a(f) of section 176.041 indicates that "[a]ny person for whom coverage is elected *pursuant to this subdivision* shall be included within the meaning of the term employee for the purposes of this *chapter*." (Emphasis added).

Reading the plain language of the Act as a whole, the first question should be whether the person is an "employee," that is, did the owner hire him to perform services? Only then is his relationship to the proprietor covered by the Act. If the person is an employee within the meaning of the Act, then you proceed to determine whether the person's employment is expressly excluded from mandatory coverage. If his employment is expressly excluded from mandatory coverage, then you must determine whether the employer can still elect coverage that will provide workers' compensation benefits in the event the person suffers "injury arising out of and in the

course of [such] employment." § 176.011, Subd. 16. If the employer can and did elect coverage, then the family-member employee is an employee for purposes of workers' compensation coverage and benefits.

The district court's interpretation of the Act would render business owners' family members "employees" merely by virtue of their familial relationship. This would seemingly provide them with workers' compensation benefits for any injury incurred under any circumstance. Such an interpretation is fanciful. Section 176.041, subdivision 1a(f), specifies that an employer-spouse can elect coverage "for an *employee* who is a spouse," not for spouses generally. The Fund would have us believe that the availability of the election option transforms an employer's spouse into a statutory employee of the business who can, with or without an actual election, recover benefits from the employer-spouse (or her workers' compensation insurance carrier).[3] However, this interpretation would convert the Act into a benefits program extending well beyond the reach of the legislation. Under the better reading, a proprietor can "elect coverage for an *employee* who is a spouse," and then, to overcome the specified exclusions, any employee-spouse "for whom coverage is elected pursuant to . . . subdivision [1a] shall be included within the meaning of the term employee for purposes of the chapter." (Emphasis added). But a spouse cannot be elected to statutory coverage unless he is an employee as that term is defined by the Act. See §§ 176.011, Subd. 9; 176.041, Subd. 1a(f). In other words, the latter sentence can bring an otherwise excluded family-member employee within the chapter's protection, but cannot transform a non-employee family member into an employee for purposes of benefits under the Act.

---

[3]Presumably under the scenario advanced by the Fund, if insurance coverage is not available to provide benefits to an employee-spouse, benefits would be recoverable directly from the employer-spouse under the Act.

Meyer could not have been covered for purposes of workers' compensation benefits even had his spouse elected to include him under section 176.041, subdivision 1a. Although he is indeed a spouse, under the undisputed facts, he was not an employee. His relationship with his spouse bears no indicia of an employment relationship. Cf. Hunter v. Crawford Door Sales, 501 N.W.2d 623, 624 (Minn. 1993) (indicating that criteria used to determine whether a person is an employee include "the right to control the means and manner of performance, the mode of payment, the furnishing of materials or tools, the control of the premises where the work is to be done, and the right of the employer to discharge"). Although Meyer was perhaps performing a peripheral service for his spouse, there is no evidence that his services were "for hire." All evidence points to him merely performing the gratuitous favor of measuring the building. Thus, the stipulated facts reveal no evidence that Meyer was an employee as defined in the Act.

Furthermore, assuming arguendo that he was an employee, his employment could, at generous best, only be considered "casual," and was not in the "usual course of the trade, business, profession, or occupation of " his spouse as a restaurant proprietor. § 176.041, Subd. 1(k). Meyer's measuring the wall was "casual," in every sense of the word, in that it was "without regularity," "of comparatively minor importance," "temporary and of short duration," could not "be characterized as permanent or periodically regular," and occurred merely "by chance." Amundsen v. Poppe, 34 N.W.2d 337, 340 (Minn. 1948). Also, Meyer's task was "a trifling thing," and therefore not within Meyer's spouse's trade, business, profession, or occupation. Sink v. Pharaoh, 212 N.W. 192, 192-93 (Minn. 1927). Furthermore, the task was not "a habitual or regular occupation in which [Meyer's spouse] engage[d] for a substantial amount of time, with a view to making a livelihood or gain." Amundsen, 34 N.W.2d at 341. As earlier noted, the Act contains no provision that allows employers to override by election the exclusion of such casual employments. Therefore, even had we not found Meyer was ineligible for workers' compensation because he was not an employee, he would have been excluded from coverage under

section 176.041, subdivision 1(k) because his "employment" could only at best be construed as casual and not in the usual course of his spouse's business.

## III.   CONCLUSION

Because, as a matter of law, Meyer would have been ineligible for workers' compensation benefits, we reverse and remand to the district court for further proceedings consistent with this opinion. The court should also exercise its discretion regarding the issue of attorneys' fees in accordance with applicable law. <u>See Lawrence v. Westerhaus</u>, 749 F.2d 494, 495-96 (8th Cir. 1984).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.